TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant/Cross–Appellants, Alan W. Alexander, Billy Davis, Joseph Randy Dillard, Ruben Duran, Kenny Foster, Maria G. Garza, Gregory Haire, Bobby Harper, Eduardo Jimenez, Dennis D. Land, Danny Lewis, William D. Lord, James S. Lucas, Gary P. McCully, Robert E. Ralls, Jerry Schwab

v.

Alan W. ALEXANDER, Billy Davis, Joseph Randy Dillard, Ruben Duran, Kenny Foster, Maria G. Garza, Gregory Haire, Bobby Harper, Eduardo Jimenez, Dennis D. Land, Danny Lewis, William D. Lord, James S. Lucas, Gary P. McCully, Robert E. Ralls, Jerry Schwab, Appellees/Cross–Appellee, Texas Department of Public Safety.

No. 03–05–00297–CV.

Court of Appeals of Texas, Austin.

Oct. 22, 2009.

Richard D. Naylor, Assistant Attorney General, Austin, TX, for Appellant.

Jack B. Krona Jr., Christopher L. Barnes, Pezzulli Kinser, LLP, Dallas, TX, for Appellees.

Before Justices PATTERSON, PURYEAR and WALDROP.

## OPINION

DAVID PURYEAR, Justice.

Sixteen plaintiffs—Alan W. Alexander, Billy Davis, Joseph Randy Dillard, Ruben Duran, Kenny Foster, Maria G. Garza, Gregory Haire, Bobby Harper, Eduardo Jimenez, Dennis D. Land, Danny Lewis, William D. Lord, James S. Lucas, Gary P. McCully, Robert E. Ralls, and Jerry Schwab ("the plaintiffs")—sued the Texas Department of Public Safety (TDPS), bringing claims for declaratory and injunctive relief, see Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008), and claims under the Texas Commission on Human Rights Act (TCHRA), see Tex. Lab.Code Ann. §§ 21.051, 21.055 (West 2006). The plaintiffs' claims were based on a November 2001 promotion process in which none of the plaintiffs was promoted. Before the case went to trial, TDPS filed a plea to the jurisdiction, which the trial court denied. TDPS appealed the ruling to this court in an interlocutory appeal and filed a motion for stay of trial pending appeal. The trial court denied the motion and proceeded to trial. The jury found in favor of Garza on her gender-discrimination claim and Garza and Ralls on their retaliation claims. The jury also found that TDPS failed to conduct its promotion process in a manner consistent with its policies and procedures. In a final judgment, the trial court ordered that Garza and Ralls recover on their claims and that all the plaintiffs recover attorneys' fees. The trial court also granted declaratory and injunctive relief.

Meanwhile, TDPS's interlocutory appeal regarding the denial of its plea to the jurisdiction was still pending before this court. In April 2005, we dismissed the interlocutory appeal as moot but noted that TDPS could raise issues relating to the denial of its plea to the jurisdiction in an appeal from the final judgment. See Texas Dep't of Pub. Safety v. Alexander, No. 03–04–00439–CV (Tex.App.-Austin April 14, 2005), available at http://www.3 rdcoa.courts.sta te.tx.us/opinions/Opinion. asp?OpinionID=13648. In May 2005, TDPS appealed from the trial court's final judgment, and we transferred the documents and records from the interlocutory appeal to the appeal from the final judgment. Because we conclude that the trial court lacked subject-matter jurisdiction over the plaintiffs' claims, we vacate the trial court's final judgment and dismiss the plaintiffs' suit for want of subject-matter jurisdiction.

## BACKGROUND

In August 2001, TDPS announced the opening of eleven captain positions in the narcotics service. The positions became available as a result of a major restructuring of the narcotics service based on a mandate from the governor's office. To apply for promotion, applicants had to undergo a written and oral exam. After applicants completed the written exam, those with the top thirty-three scores were called to appear for interviews before an oral examining board in November 2001. The plaintiffs were among the thirty-three candidates called to appear before the board. The eleven people with the highest total scores from a combination of the scores they received on the written and oral exams were then promoted to the eleven open captain positions. TDPS announced the results of the promotion process at the end of November 2001. None

of the plaintiffs were among those promoted.

After the promotions were announced and the oral-exam scores revealed, the plaintiffs began to suspect that the eleven people promoted had already been chosen by the oral examining board before it conducted the oral exams and that the board had "rigged" the oral-exam process to secure the promotion of the eleven pre-chosen applicants. In August 2002, the plaintiffs filed suit in state court against TDPS, seeking declaratory and injunctive relief.[1] Later, in December 2003, the plaintiffs filed an amended petition in state court in which all the plaintiffs asserted claims for declaratory and injunctive relief, and Garza, Haire, and Lewis asserted claims of discrimination under the TCHRA—Garza based on gender, Haire based on race, and Lewis based on age. All of the plaintiffs brought claims of retaliation under the TCHRA, alleging that TDPS refused to promote them after the November 2001 promotions because they filed charges of discrimination.

In June 2004, TDPS filed a plea to the jurisdiction, arguing among other things that the plaintiffs did not timely file their complaints of discrimination. The trial court denied the plea. TDPS appealed the court's ruling and filed a motion for stay of trial pending appeal. The trial court denied the motion, and the case proceeded to trial before a jury. During trial, the plaintiffs did not introduce any further documentary evidence regarding the timeliness of their complaints. However, some of the plaintiffs—Foster, Garza, Haire, Lord, Lucas, and Ralls—testified to varying degrees about the filing of their complaints. After the plaintiffs rested their case, TDPS moved for a directed verdict on several points, including a repetition of its earlier allegation that the plaintiffs failed to establish that they timely filed their complaints of discrimination. The trial court denied the motion. The jury found in favor of Garza on her gender discrimination claim and Garza and Ralls on their retaliation claims. The jury also found that TDPS failed to conduct its promotional process in a manner consistent with its policies and procedures. Before the trial court entered its final judgment, TDPS filed a motion for judgment notwithstanding the verdict, alleging once more among other things that Garza and Ralls failed to establish that they timely filed their charges of discrimination. The trial court denied the motion.

1. The plaintiffs also filed suit in federal court against several TDPS officials in their individual capacities, bringing claims under 42 U.S.C. § 1983. In January 2003, the plaintiffs amended their state-court petition to add claims of discrimination and retaliation in violation of both state and federal law, including the TCHRA, the Texas Whistle Blower's Act, Title VII, and the ADEA. TDPS removed the state suit to federal court, where the suit was consolidated with the pending federal action. TDPS filed a motion for summary judgment, which the court granted in part and denied in part. Consistent with the court's summary-judgment ruling, the court dismissed with prejudice all claims brought under the Texas Whistle Blower's Act and the § 1983 claims of Alexander, Dillard, Davis, Duran, Garza, Haire, Jimenez, Land, Lewis, Lord, Lucas, McCully, Ralls, and Schwab. The court also dismissed with prejudice the plaintiffs' equal-protection and due-process claims for failure to state a claim upon which relief could be granted. Based on an agreement between the parties, the court further dismissed with prejudice the Title VII, ADEA, and § 1983 claims of Garza, Haire, and Lewis and remanded the same plaintiffs' TCHRA claims to state court. The court also dismissed with prejudice the plaintiffs' federal discrimination and retaliation claims and remanded to state court the plaintiffs' state retaliation claims and claims for declaratory and injunctive relief. The only surviving federal claims were the § 1983 claims of Foster and Harper. The record does not reflect what became of the surviving federal claims.

In the trial court's final judgment, the court ordered that Garza and Ralls recover back pay, compensatory damages, and pre-judgment interest, and ordered TDPS to promote Garza and Ralls to the first two captain positions that became available in the narcotics service. The court also issued a permanent injunction, enjoining TDPS from discriminating in its promotion processes on the basis of gender or retaliating against people who exercised their rights or engaged in protected activities as defined in the TCHRA. In addition, the court stated that TDPS was required by law to follow its written policies and procedures for selecting candidates, that it failed to follow the law and its policies regarding the 2001 promotion process, and that senior officials intentionally circumvented the law and manipulated the process to promote eleven pre-selected candidates. The court then issued a declaration that the 2001 promotion process was not based on merit, thus violating state law and departmental policy, and ordered TDPS to follow its written policies and procedures regarding promotions. Finally, the court ordered that the plaintiffs recover attorneys' fees and costs and pre- and post-judgment interest.

TDPS appealed from the final judgment, and we combined documents and records filed with the interlocutory appeal with those filed with the appeal from the final judgment. *See id.* Because we conclude that the trial court lacked subject-matter jurisdiction over all of the plaintiffs' claims, we do not reach the issues raised regarding trial.

## DISCUSSION

 In Texas, sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Texas Parks & Wildlife Dep't v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). The TCHRA provides a limited waiver of sovereign immunity when a governmental unit has committed employment discrimination on the basis of race, color, disability, religion, sex, national origin, or age, or when a governmental entity has retaliated or discriminated against a person who engaged in certain protected activities. *See* Tex. Lab.Code Ann. §§ 21.002(8)(D), 21.051, 21.254 (West 2006); *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 660 (Tex.2008); *Texas Dep't of Criminal Justice v. Cooke,* 149 S.W.3d 700, 704 (Tex. App.-Austin 2004, no pet.). Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction.[2] *Miranda,* 133 S.W.3d at 225–26.

In its plea to the jurisdiction, TDPS argued that the plaintiffs failed to provide some amount of evidentiary support for each element of their discrimination and retaliation claims and that the plaintiffs' claims were time-barred. In response to the plea, the plaintiffs presented evidence in support of their claims and the timeliness of the filing of their complaints of discrimination. After considering the evidence, the trial court denied the plea. On appeal, we address two issues: (1) whether the plaintiffs' TCHRA claims are time-barred, leaving the court without subject-matter jurisdiction over those claims, and (2) if so, whether the court therefore also loses jurisdiction over the plaintiffs' declaratory-judgment claim.[3] We address each issue in turn.

---

**2.** A challenge to the trial court's subject-matter jurisdiction may be raised for the first time on appeal. *See Texas Ass'n of Bus. v.* *Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

**3.** In its brief regarding the denial of its plea to the jurisdiction, TDPS also argues that the

### TCHRA Claims—Timeliness of Complaints

■ In order to bring a claim of employment discrimination under the TCHRA, plaintiffs must file a sworn, written complaint with TCHR within 180 days of the alleged discriminatory act. *See* Tex. Lab.Code Ann. §§ 21.201–.202 (West 2006). The timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit. *Specialty Retailers, Inc. v. DeMoranville,* 933 S.W.2d 490, 492 (Tex.1996); *Texas Parks & Wildlife Dept. v. Dearing,* 150 S.W.3d 452, 458 (Tex.App.-Austin 2004, pet. denied).[4]

■ The time period for filing a complaint begins to run when the discriminatory acts occur, not when the consequences of the acts become most painful. *Specialty Retailers,* 933 S.W.2d at 492. In the case of an alleged discriminatory employment decision, the limitations period begins to run when the employee is informed of the decision, not when the decision comes to fruition. *Id.* at 493.

■ In this case, the record shows that TDPS distributed a communication on November 30, 2001, announcing the names of the eleven employees chosen for promotion. The promotions took effect on December 15, 2001. Because appellees were informed of the promotions on November 30, 2001, the limitations period began to run on that date. *See id.* Thus, appellees were required to file their charges of discrimination no later than May 29, 2002.

### A. Significance of Complaint

Because an administrative complaint serves to establish the jurisdiction of the court, the complaint itself carries significance and must meet several statutory requirements. In order for a document to constitute a proper complaint of discrimination, it must: (1) be in writing; (2) be made under oath; (3) state that an unlawful employment practice was committed; (4) contain the facts on which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice; and (5) include facts sufficient to enable TCHR to identify the respondent. *See* Tex. Lab.Code Ann. § 21.201.

■ A recent U.S. Supreme Court case serves to further highlight the importance of the contents of an administrative complaint of discrimination. *See Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1157–60, 170 L.Ed.2d 10 (2008). In *Holowecki,* the U.S. Supreme Court held that a complaint of unlawful age discrimination under the Age Discrimination

---

plaintiffs were required to and did not provide some amount of evidentiary support on each element of their retaliation claims. Because we conclude that the plaintiffs' claims are time-barred, we need not address the evidentiary argument.

4. The plaintiffs' timely filing of their complaints is only one of the requirements they were required to satisfy in order to exhaust their administrative remedies before bringing suit in an employment-discrimination case. *See* Tex. Lab.Code. Ann. §§ 21.201–.262 (West 2006); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485–86 (Tex.1991). To exhaust their administrative remedies, they had

to: (1) file the complaint with TCHR within 180 days of the alleged discriminatory act; (2) allow TCHR 180 days to dismiss or resolve the complaint before filing suit; and (3) file suit in district court no later than two years after the complaint is filed with TCHR. *See* Tex. Lab.Code Ann. §§ 21.201–.202, 21.208, 21.256. Because in its plea to the jurisdiction and appellate briefs TDPS challenges only the first requirement—the timeliness of the filing of the plaintiffs' complaints of discrimination—we address only that issue with regard to the plaintiffs' exhaustion of their administrative remedies.

in Employment Act must contain certain specified information, including (1) the name, address, and telephone number of the employee and the employer; (2) an allegation that the employee has been the victim of discrimination; (3) the number of employees who work at the employee's place of employment; (4) a statement indicating the employee has not sought the assistance of any government agency regarding the matter; and (5) a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.[5] *Id.*

Because a complaint must contain certain specified information, a plaintiff's failure to establish the necessary components of the complaint is a failure to meet the statutory prerequisites to filing suit, resulting in a failure to properly exhaust administrative remedies. *See* Tex. Lab.Code Ann. § 21.201. In addition, the factual allegations included in the complaint are of particular importance because they determine the basis upon which a plaintiff may sue. *See Elgaghil v. Tarrant County Junior Coll.,* 45 S.W.3d 133, 142 (Tex.App.-Fort Worth 2000, pet. denied) (stating that when filing suit under TCHRA, plaintiff "may raise only the specific issue made in the employee's administrative complaint and 'any kind of discrimination like or related to the charge's allegations.'") (quoting *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993)).

**B. Standard of Review—Plea to the Jurisdiction**

A plea to the jurisdiction often may be determined solely from the pleadings. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554–55 (Tex.2000). We review such a determination de novo. *Miranda,* 133 S.W.3d at 226. However, when a plea to the jurisdiction challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *Id.* at 227.

When, as here, a challenge to the existence of jurisdictional facts does not implicate the merits of the case and the facts are disputed, the court must make the necessary fact findings to resolve the jurisdictional issue. *See id.* at 226 ("Whether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case.") (quoting *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir. 1997) (citing *Williamson v. Tucker,* 645 F.2d 404, 412–13 (5th Cir.1981))). Although the jurisdictional determination should be made as soon as practicable, the trial court has discretion to await further development of the case. *See id.* at 227.

The jurisdictional evidence here, which involves the timeliness of the plaintiffs' complaints of discrimination, does not implicate the merits of the case, which concern whether TDPS discriminated or retaliated against the plaintiffs. As previously indicated, TDPS's challenge to the timeliness of the plaintiffs' complaints of discrimination is a challenge to the exis-

---

5. Because one of the purposes of the TCHRA is to correlate state law with federal law in employment-discrimination cases, we may look to federal law in interpreting the TCHRA's provisions. *See* Tex. Lab.Code Ann. § 21.001 (West 2006); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000). Here, we cite to *Holowecki* for the general principle that the complaint itself has significance and must contain certain substantive components.

tence of jurisdictional facts to support the trial court's subject-matter jurisdiction. *See Specialty Retailers,* 933 S.W.2d at 492. The trial court was therefore required to resolve the jurisdictional issue based on undisputed facts or its own fact findings. *Miranda,* 133 S.W.3d at 226. Where, as here, the trial court did not issue findings of fact, we presume that the trial court resolved all factual disputes in favor of its determination. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). Thus, because the trial court denied TDPS's plea to the jurisdiction, we presume that the trial court made a factual finding that the plaintiffs timely filed their complaints.

On appeal, any fact findings made to resolve the jurisdictional issue, including implied findings, may be challenged for legal sufficiency. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002). We review the entire record to determine if any evidence supports jurisdiction. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). Here, TDPS challenges the legal sufficiency of the evidence supporting the trial court's implied finding that the plaintiffs timely filed their complaints.

## C. Legal–Sufficiency Standard

In this legal-sufficiency challenge, the specific jurisdictional issue we must address is whether the plaintiffs raised any evidence that they filed, on or before May 29, 2002, an administrative complaint with TCHRA that met all the requirements listed in section 21.201 of the labor code and set forth the specific factual allegations upon which they later filed suit. *See* Tex. Lab.Code Ann. § 21.201; *Elgaghil,* 45 S.W.3d at 142. For TDPS to prevail on its challenge, it must establish that there is no evidence to support the trial court's implied finding that the plaintiffs timely filed

proper complaints. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983) (stating that appellant who attacks legal sufficiency of adverse finding on issue on which he did not have burden of proof must demonstrate on appeal that there is no evidence to support finding). We will sustain a legal-sufficiency or "no evidence" challenge if the record shows: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence establishes conclusively the opposite of a vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex.2005).

We review the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* at 807. The ultimate test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to make the finding under review. *Id.* at 827. We cannot substitute our judgment for that of the trier of fact as long as the evidence falls within this zone of reasonable disagreement. *Id.* at 822. However, if the evidence allows of only one inference, we may not disregard it. *Id.* When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004). Thus, evidence that is so slight as to make any inference a guess is in legal effect no evidence. *Id.*

## D. Legal–Sufficiency Analysis

■ In support of its plea to the jurisdiction, TDPS submitted a copy of each plaintiff's "Charge of Discrimination," which was filed with TCHR and the Equal Employment Opportunity Commission (EEOC) and then sent to TDPS's Office of General Counsel by the EEOC. Because all of the charges are dated after the May 29, 2002 deadline, TDPS argued that the plaintiffs did not timely file their charges. In response, the plaintiffs submitted several documents purporting to establish the timely filing of a complaint, none of which included a copy of any type of complaint document filed before the deadline. On appeal, the plaintiffs argue that they established the timely filing of their charges because they showed that they filed their *intake questionnaires* before the deadline, and they contend that their intake questionnaires serve as initial complaints on which the "finalized" charges of discrimination are based and to which the finalized charges should relate back.[6] We agree that timely filed intake questionnaires can sometimes be used to satisfy the timeliness

requirement under the TCHRA. *See* Tex. Lab.Code Ann. § 21.201(e), (g); *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 373 (Tex.1993); *see also Texas Tech Univ. v. Finley*, 223 S.W.3d 510, 515 (Tex.App.-Amarillo 2006, no pet.) (charge deemed timely even though dated after deadline because plaintiff's initial complaint letter, which satisfied requirements of proper complaint, filed before deadline); *Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App.-Corpus Christi 1995, writ denied) (charge dated after deadline deemed timely because related back to date plaintiff sent initial complaint letter). However, only one of the sixteen plaintiffs provided a copy of an intake questionnaire in response to TDPS's plea to the jurisdiction, and the questionnaire does not contain any indication that it was filed by the deadline. The record does not contain any other similar document filed by any of the other plaintiffs on or before the deadline.[7]

■ Because the record does not include direct evidence that the plaintiffs

6. In addition to the other documents the plaintiffs offered in response to TDPS's plea to the jurisdiction, they also provided a document titled "How to File an Employment Discrimination Complaint," which explains how an intake questionnaire eventually becomes a finalized complaint. The document states that employees seeking to file a complaint must first call or visit the TCHR office and request an intake questionnaire. Once they complete the questionnaire, the TCHR office assigns an investigator to the case, who drafts a perfected complaint based on what the employees stated in the questionnaire. After the investigator completes the perfected complaint, the complaint is mailed to the employees, and the employees must review, sign, and notarize it. Once they do so, they must return the complaint to the TCHR office no later than thirty days after receiving it.

7. In support of their argument that they need not produce copies of their intake questionnaires in order to prove the timeliness of their filings, the plaintiffs cite to *Rice v. Russell–*

*Stanley, L.P.*, 131 S.W.3d 510, 514 (Tex.App.-Waco 2004, pet. denied). However, the issue in *Rice* is considerably different from the one here. In *Rice*, the plaintiff timely filed his discrimination complaint with the TCHR and the EEOC and received a right-to-sue letter from the EEOC but not from the TCHR. *Id.* at 512. The defendant filed a no-evidence motion for summary judgment, asserting that the plaintiff was required to provide a copy of his right-to-sue letter from the TCHR in order to prove that he exhausted his administrative remedies. *Id.* The court held that the right-to-sue letter itself was not part of the exhaustion requirement. *Id.* at 513. Rather, it was a plaintiff's entitlement to a right-to-sue letter that exhausted his administrative remedies. *Id.* Here, the issue involves the plaintiffs' initial complaints, not their right-to-sue letters. In fact, neither of the parties in this case raises the issue of right-to-sue letters. Accordingly, we conclude that *Rice* is too distinguishable from this case to support the plaintiffs' position.

timely filed an intake questionnaire or similar document before the 180–day deadline, we must determine whether the circumstantial evidence presented by the plaintiffs is legally sufficient to establish the questionnaires' content and timeliness. An ultimate fact may be proven by circumstantial evidence, *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex.1993), but circumstantial evidence must still consist of more than a scintilla in order to withstand a legal-sufficiency challenge, *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex.1995). A fact-finder may not infer an ultimate fact from meager circumstantial evidence that could give rise to any number of inferences, none more probable than another. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 392 (Tex.1997). In cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex.2003). A vital fact may not be established by piling inference upon inference. *Id.* at 728.

We begin our analysis with the evidence offered by fourteen of the plaintiffs, including Alexander, Davis, Dillard, Duran, Foster, Haire, Harper, Jimenez, Land, Lewis, Lord, Lucas, McCully, and Schwab ("the fourteen plaintiffs"). As stated previously, we review the entire record to determine if any evidence supports jurisdiction. *Texas Ass'n of Bus.*, 852 S.W.2d at 446. To survive a legal-sufficiency challenge, the plaintiffs were required to present more than a scintilla of evidence that they timely filed an intake questionnaire or similar document containing the necessary components of a proper administrative complaint. *See* Tex. Lab.Code Ann. §§ 21.201–.202; *City of Keller*, 168 S.W.3d at 810; *Elgaghil*, 45 S.W.3d at 142. As evidence of the filing of their intake questionnaires, the

fourteen plaintiffs offered the following: (1) a copy of a memo they each wrote to their respective supervisors before the May 29, 2002 deadline stating that they had "initiated the complaint process" or "initiated a complaint of discrimination" with TCHR; (2) an affidavit from their attorney stating that either he or a member of his staff had personally contacted each of the plaintiffs and confirmed that they all filed "a charge" with TCHR on or before May 30, 2002; and (3) an affidavit from Plaintiff Ralls stating that he filed a "charge of discrimination" on or before May 14, 2002, and that he confirmed that all of the other plaintiffs "followed the same procedure" he did.

While the evidence presented by the fourteen plaintiffs supports an inference that they filed some type of complaint document before the deadline, none of the evidence provides a reasonable basis for inferring that the fourteen plaintiffs timely filed a proper document to which we could date back a later perfected charge. *See* Tex. Lab.Code Ann. §§ 21.201–.202; *Hennigan*, 858 S.W.2d at 373; *Marathon Corp.*, 106 S.W.3d at 729; *Elgaghil*, 45 S.W.3d at 142. For example, the memos the fourteen plaintiffs wrote to their supervisors are evidence only that the plaintiffs took some type of action to complain about discrimination, not that they filed a document with TCHR containing the elements of a proper complaint. Similarly, the affidavits from the plaintiffs' attorney and Ralls are evidence only that the fourteen plaintiffs filed some type of document by the deadline, not that they filed a proper complaint. Thus, the record does not contain any evidence connecting the timely filing of *some document* with the timely filing of *an intake questionnaire or similar document containing the components*

*of a proper complaint.*[8] Because the record contains no evidence that the fourteen plaintiffs timely filed proper complaints with TCHR, we hold that the trial court erred in denying TDPS's plea to the jurisdiction with regard to the fourteen plaintiffs' TCHRA claims.[9] *See City of Keller,* 168 S.W.3d at 810; *Ford Motor Co.,* 135 S.W.3d at 601.

■ We turn now to the remaining two plaintiffs, Garza and Ralls, and to the evidence raised by each of them in response to TDPS's plea to the jurisdiction. We begin with the evidence presented by Garza, which included: (1) a copy of her intake questionnaire, signed by her and dated on May 21, 2002; and (2) an affidavit stating that she "filed a charge of discrimination concerning the [November 2001 promotion process]" on or before May 21, 2002.[10]

Although Garza's intake questionnaire contained specific information about the conduct of which she complained, and although intake questionnaires can sometimes be used to satisfy the timeliness requirement, *see Hennigan,* 858 S.W.2d at 373, Garza's questionnaire does not fall within the specified circumstances. In *Hennigan,* the Texas Supreme Court held that "a verified complaint filed outside of the 180-day time limit relates back to, and satisfies any deficiencies in an unverified questionnaire filed within the 180-day limit, therefore satisfying the 180-day jurisdictional requirement." *Id.* The court explained that its holding was based on section 21.201(e) of the labor code,[11] which

8. In addition to the other evidence presented, Foster also produced an affidavit stating that he filed a "charge of discrimination" on or before May 16, 2002. However, like the other evidence, Foster's affidavit is evidence only that he filed some type of document by the deadline, not that he filed a document containing the components of a proper complaint. Thus, the affidavit does not add anything to the other evidence offered.

9. Even considering the additional evidence introduced at trial, the fourteen plaintiffs still did not offer any evidence that they timely filed a proper complaint. Like the evidence presented in response to TDPS's plea to the jurisdiction, some of the fourteen plaintiffs' trial testimony addressed the timeliness of the filing of some type of initial complaint document, but none of the testimony spoke to the issue of whether the initially filed document contained the components necessary to constitute a proper complaint. *See* Tex. Lab. Code Ann. § 21.201; *Federal Express Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 1157–60, 170 L.Ed.2d 10 (2008); *Elgaghil v. Tarrant County Junior Coll.,* 45 S.W.3d 133, 142 (Tex.App.-Fort Worth 2000, pet. denied). Further, none of the fourteen plaintiffs introduced a copy of their properly completed and filed initial complaint document. Thus, even at trial, the fourteen plaintiffs did not offer legally sufficient evidence of the timely filing

of a proper complaint. *See City of Keller,* 168 S.W.3d 802, 810 (Tex.2005); *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004).

10. Garza also presented the same evidence as the fourteen plaintiffs: (1) a copy of a memo she sent to her supervisor on May 22, 2002, stating that she had "initiated the complaint process with [TCHR] alleging [her] concerns of discrimination" regarding the promotion process; (2) an affidavit from Ralls stating that he filed a "charge of discrimination" on or before May 14, 2002, and that he confirmed that all of the other plaintiffs "followed the same procedure" he did; and (3) an affidavit from the plaintiffs' attorney stating that either he or a member of his staff had personally contacted each of the plaintiffs and confirmed that they all filed their charges with TCHR before May 30, 2002. Because we have already determined that these three items are no evidence that the plaintiffs filed a timely intake questionnaire or similar document containing the components of a proper complaint, we do not analyze the items again here.

11. The *Hennigan* court cited to a section of the Texas Administrative Code in force at the time, which was substantively the same as the current version of section 21.201 of the Texas Labor Code. Thus, we cite to the labor code for ease of reference.

allows complainants to amend their complaint to cure technical defects or omissions, and section 21.201(f) of the labor code, which allows an amendment to the complaint to relate back to the date the complaint was first received by the commission. *See* Tex. Lab.Code Ann. § 21.201(e), (f). Thus, if Garza could show that she filed her questionnaire before the 180–day deadline, she could receive the benefit of *Hennigan,* and her late-filed charge would relate back to the date she filed the questionnaire. However, Garza's questionnaire shows only that it bears a date indicating that it was signed before the deadline, not that Garza filed it by the deadline. There is no file stamp on the document, nor is there a notation of any kind underneath a typed statement on the first page of the document reading "Date Received by TCHR." [12] Thus, there must be something else in the record to create a logical bridge between the completed intake questionnaire and the timely filing of that questionnaire. *See Marathon Corp.,* 106 S.W.3d at 729.

Garza's affidavit does not provide the necessary connection. Although the affidavit states that Garza timely filed a "charge of discrimination," it does not identify the charge as an intake questionnaire or explain the contents of the charge. As a result, a fact-finder could only speculate that the document filed by the deadline was in fact Garza's intake questionnaire. Because there is no evidence in the record to establish that Garza timely filed an intake questionnaire or any other document containing the components of a proper complaint, we conclude that the trial court erred in denying TDPS's plea to the jurisdiction with respect to Garza's TCHRA claims.[13]

■ We also conclude that the final remaining plaintiff, Ralls, did not raise any evidence that he timely filed a proper complaint. In response to TDPS's plea to the jurisdiction, Ralls presented: (1) a January 28, 2002 memo from him to the captain of his department written on behalf of himself and several other unnamed lieutenants, requesting a meeting with the chief of the department to determine the proper procedure for the lieutenants to file a complaint regarding the November 2001 promotion process; (2) a May 14, 2002 letter from TCHR to TDPS notifying TDPS that Ralls had filed a complaint, that TDPS may not be able to perfect the complaint within the 180–day time frame,

12. Because we are guided by federal-court decisions interpreting federal employment-discrimination statutes, we also note that Garza's intake questionnaire did not request remedial action of any kind as required by *Holowecki.* 128 S.Ct. at 1157–58. Specifically, Garza did not write a response to a question posed on a page attached to the intake questionnaire that asked, "What is the minimum remedy that you are willing to accept as a settlement or resolution should this develop into an official complaint?"

13. Although Garza offered a copy of her intake questionnaire in response to TDPS's plea to the jurisdiction, she did not offer a copy at trial or testify at trial that she filed her intake questionnaire by the deadline. Instead, she testified that she obtained a "complaint package" from TCHR in early May 2002 and that she informed TCHR that she felt TDPS discriminated against her based on her gender. She did not testify as to what constituted the "complaint package." In addition, she explained that she received a "charge sheet" from TCHR and that she signed and returned it. At another point, she testified that she picked up "the application" from TCHR, completed it, and submitted it. She did not explain the contents of the charge sheet or application. Thus, even at trial, Garza did not offer any evidence connecting the filing of some document—whether it was a "complaint package," "charge sheet," or "application"—with the filing of an intake questionnaire or similar document, nor did she offer evidence describing the contents of the document she claimed to have filed.

and that his perfected complaint would be amended to reflect the date that his initial complaint was received by TCHR; (3) a May 30, 2002 letter from TCHR to Ralls stating that TCHR had referred Ralls's complaint to the EEOC for investigation; and (4) a June 20, 2002 letter from the EEOC to Ralls acknowledging receipt of Ralls's charge.[14]

Although Ralls presented some evidence that he filed *some type of document* complaining of discrimination before the deadline, he did not offer any evidence to establish that the document was an intake questionnaire or similar document containing the elements necessary to constitute a proper complaint. *See* Tex. Lab.Code Ann. § 21.201; *City of Keller*, 168 S.W.3d at 810; *Elgaghil*, 45 S.W.3d at 142. First, Ralls's January 2002 memo to his supervisor is evidence only that Ralls planned to file a complaint, not that he in fact filed one. Second, the May 2002 letters from TCHR and the June 2002 letter from the EEOC are evidence only that Ralls timely filed a complaint of some type, not that he filed an intake questionnaire or similar document and not that the document contained the components of a proper com-

plaint. Thus, like the other plaintiffs, Ralls provides no evidence of the contents of the document or type of document he filed.

Further, although the May 14 letter from TCHR acknowledging receipt of Ralls's initial complaint stated that Ralls's perfected complaint would be amended to relate back to the date the initial complaint was received by TCHR—a result consistent with that in *Hennigan*—Ralls did not produce a copy of his initial complaint or intake questionnaire. We therefore have no knowledge of the contents of the document he claims to have filed or the date it was filed, and we cannot relate a charge back to a date and document absent from the record. Accordingly, we conclude that Ralls offered no evidence to establish that he timely filed a proper complaint, and we hold that the trial court erred in denying TDPS's plea to the jurisdiction with regard to Ralls's TCHRA claims.[15] *See City of Keller*, 168 S.W.3d at 810.

### E. Conclusion

Because all of the plaintiffs failed to present any evidence of the timely filing of a proper complaint, the trial court erred in

---

14. In addition to the other evidence Ralls offered, he also provided some of the same evidence as Garza and the fourteen plaintiffs, including: (1) a memo to his supervisor indicating that he had "initiated the complaint process with [TCHR] alleging [his] concerns of discrimination" regarding the promotion process; (2) an affidavit from the plaintiffs' attorney stating that either the attorney or a member of his staff had personally contacted each of the plaintiffs and confirmed that they all filed their charges with TCHR before May 30, 2002; and (3) his own affidavit stating that he filed a "charge of discrimination" on or before May 14, 2002. Because we have already concluded that the same evidence offered by Garza and the fourteen plaintiffs is no evidence that they timely filed an intake questionnaire or similar document containing the components of a proper complaint, we do not re-weigh the evidence again here.

15. Ralls also testified at trial regarding the filing of his complaint. On direct examination, he spoke of his "notice of discrimination," which was admitted as an exhibit at trial. The notice of discrimination accompanied Ralls's perfected charge, which was dated after the deadline. On cross-examination, Ralls stated that he contacted TCHR and received a "packet" and "questionnaire," which he completed and sent back, and that TCHR then sent him a "formal charge," which he submitted. However, he still did not offer any evidence regarding the timely filing of a proper complaint because his generalized testimony about the filing of the document provided no description of its contents, and he did not produce a copy of the document.

denying TDPS's plea to the jurisdiction with regard to the plaintiffs' TCHRA claims. *See City of Keller,* 168 S.W.3d at 810; *Davis v. Autonation USA Corp.,* 226 S.W.3d 487, 491 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (stating that failure to timely file administrative complaint deprives Texas trial courts of subject-matter jurisdiction).

### Declaratory Relief

We now turn to the plaintiffs' declaratory-judgment claim. The plaintiffs sought a declaration under the Uniform Declaratory Judgments Act (UDJA) that the November 2001 promotions were not based on merit and thus violated state law and departmental policy, including section 411.007(b) of the Texas Government Code. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008). The trial court granted the plaintiffs' request, issuing a declaration tracking the language of the request. Because we have concluded that the trial court had no jurisdiction over the plaintiffs' TCHRA claims, we must now determine whether the court's declaration may stand independent of those claims.

The UDJA provides that a party "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations." Tex. Civ. Prac. & Rem.Code Ann. § 37.004(a). De-

claratory judgment is inappropriate if it would add nothing to the injunctive or other relief sought. *See Boatman v. Lites,* 970 S.W.2d 41, 43 (Tex.App.-Tyler 1998, no pet.). A declaratory judgment should not be rendered when there is no claim that a statute is ambiguous or invalid. *Id.* A declaratory judgment also may not be used solely as a vehicle to obtain attorneys' fees, and it is inappropriate if it will serve no useful purpose. *Id.* Further, the UDJA is "merely a procedural device for deciding cases already within a court's jurisdiction." *Koch v. Texas Gen. Land Office,* 273 S.W.3d 451, 456 (Tex.App.-Austin 2008, pet. filed) (quoting *Texas Ass'n of Bus.,* 852 S.W.2d at 444). The UDJA does not extend a court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature. *Id.* (citing *Texas Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 855 (Tex.2002)).

Here, the declaration stated that the November 2001 promotions were not based on merit and thus violated state law and departmental policy, including section 411.007(b) of the Texas Government Code.[16] In reviewing the issue, we find *City of Waco v. Lopez,* 259 S.W.3d 147 (Tex.2008) instructive and hold that the trial court did not have jurisdiction over the plaintiffs' declaratory-judgment claim because the TCHRA is the exclusive state statutory remedy available for the plaintiffs' claims. In *Lopez,* the plaintiff

---

**16.** Section 411.007(b) provides:

Appointment or promotion of an officer or employee must be based on merit determined under commission rules that take into consideration the applicant's age and physical condition, if appropriate and to the extent allowed under federal law, and that take into consideration the applicant's experience and education. For promotions of commissioned officers, other than those positions covered under Section 411.0071, the

department, with the advice and consent of the commission, shall establish processes to be consistently applied and based on merit. Each person who has an application on file for a position in the department for which an applicant must take an examination shall be given reasonable written notice of the time and place of those examinations. Tex. Gov.Code Ann. § 411.007(b) (West Supp. 2008).

brought a claim under the Whistle Blower Act alleging that he was fired in retaliation for filing a grievance with the city's EEO officer complaining of age and race discrimination. 259 S.W.3d at 149–50. The city filed a plea to the jurisdiction, asserting that the TCHRA was the exclusive remedy for the plaintiff's retaliatory-discharge claim. *Id.* at 150. The court agreed with the city, concluding that the TCHRA provided the plaintiff a "specific and tailored anti-retaliation remedy, and he was obliged to use it." *Id.* at 156.

In its analysis, the court described the TCHRA as a "comprehensive remedial scheme that grants extensive protections to employees in Texas, implements a comprehensive administrative regime, and affords carefully constructed remedies." *Id.* at 153–54. The court also emphasized that the TCHRA was drafted to execute the policies of parallel employment discrimination laws—policies including administrative procedures, exhaustion of administrative remedies prior to litigation, and judicial review of administrative action. *Id.* at 154–55. In contrast, the court pointed out, the Whistle Blower Act is a "broad remedial measure" that "provides a general remedy" and has a "comparatively simple administrative exhaustion procedure." *Id.* at 154. The court determined that the TCHRA's policies "would be routinely thwarted if plaintiffs like Lopez, suing for retaliation, could simply frame their disputes as whistleblower claims and sidestep [the statute's] investigatory and conciliation scheme." *Id.* at 155. Accordingly, the court concluded that the TCHRA provided the plaintiff his exclusive state statutory remedy, and the plaintiff could recover only if he satisfied the requirements of the TCHRA. *Id.* at 156.

The same analysis applies in this case and compels the same conclusion. Like the Whistle Blower Act, the UDJA is not specific to employment-related complaints. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011. In addition, the UDJA does not require the exhaustion of administrative remedies prior to litigation. *See id.* Here, the plaintiffs sought a declaration that the November 2001 promotions violated a statute requiring the promotions to be based on merit. Although the plaintiffs pled the claim as one for declaratory judgment, the claim is in fact one of employment discrimination. *See Koch,* 273 S.W.3d at 456 (stating that litigant's request for declaratory relief does not alter suit's underlying nature). We have already concluded that the plaintiffs did not establish that they timely filed their claims of discrimination, thus failing to exhaust their administrative remedies under the TCHRA. If they were nonetheless allowed to seek a declaration that the November 2001 promotions were not based on merit, it would "render the limitations in the [TCHRA] utterly meaningless as applied to public employees." *See Lopez,* 259 S.W.3d at 154; *Texas Dep't of Pub. Safety v. Moore,* 985 S.W.2d 149, 157 (Tex. App.-Austin 1998, no pet.) ("Allowing the jurisdiction created by the UDJA to circumvent the procedures and remedies provided by the [TCHRA] could create a back door to district court not contemplated by the legislature."); *see also Texas A & M Univ. Sys. v. Luxemburg,* 93 S.W.3d 410, 425 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (declaratory-judgment action not appropriate where plaintiff's cause of action is mature and enforceable in pending suit involving same parties and issues as alleged in declaratory-judgment action).[17] Accordingly, the plaintiffs' declar-

---

**17.** To the extent that the plaintiffs cite to *Moore* for the proposition that they are enti-

tled to a declaration based on a previous unlawful employment practice regardless of

atory-judgment claim must be brought under and satisfy the requirements of the TCHRA. *See* Tex. Lab.Code Ann. §§ 21.051, 21.055, 21.125, 21.201 (West 2006); *Lopez*, 259 S.W.3d at 156; *Moore*, 985 S.W.2d at 156 (stating that the TCHRA "provides the *exclusive remedy* for alleged discrimination in administrative agency personnel decisions.").

▄▄▄ Because the plaintiffs did not establish that they satisfied the TCHRA's timeliness requirement, and because the TCHRA is the exclusive state statutory remedy for their claims, we conclude that the trial court did not have subject-matter jurisdiction over their declaratory-judgment claim.[18]

## CONCLUSION

Dismissing claims for lack of jurisdiction after a full trial in the district court is sometimes a difficult, but necessary, judgment. It is both here. However, we note that the plaintiffs were on notice both before and during trial of TDPS's continual challenge to the timeliness of their charges of discrimination, yet they still failed to produce the necessary proof of timeliness. TDPS raised the issue three times—in a plea to the jurisdiction, a motion for directed verdict after the plaintiffs rested their case, and a motion for judgment notwithstanding the verdict after trial. In addition, TDPS's interlocutory appeal regarding the denial of its plea to the jurisdiction remained pending before this court throughout trial. Thus, the plaintiffs were well aware of the challenges and had ample time to obtain copies of their timely

filed charges but still neglected to do so. Further, the time requirement for filing charges of discrimination is of great import and is strictly followed. *See Czerwinski v. Univ. of Tex. Health Sci. Ctr. at Houston Sch. of Nursing*, 116 S.W.3d 119, 121–22 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (stating that timeliness requirement "is of such import that failing to comply deprives the court of subject matter jurisdiction"); *Taylor v. General Tel. Co.*, 759 F.2d 437, 440 (5th Cir.1985) (deeming EEOC charge untimely even though mailed by plaintiff on day of deadline and received by EEOC the following day).

Because the plaintiffs failed to establish that they timely filed their charges of discrimination, the trial court lacked subject-matter jurisdiction over their TCHRA claims. The trial court also lacked subject-matter jurisdiction over the plaintiffs' declaratory-judgment claim because the plaintiffs' exclusive state statutory remedy for their claims was the TCHRA. Accordingly, we vacate the trial court's judgment and dismiss the plaintiffs' suit for want of jurisdiction.

Dissent by Justice PATTERSON.

JAN P. PATTERSON, Justice, dissenting.

Following the parties' agreed remand from federal court and a two-and-a-half week jury trial in the state district court, the majority *sua sponte* departs from the issues raised by the parties on appeal and undertakes its own fact-finding to vacate

---

whether they exhausted their administrative remedies under the TCHRA, we conclude that *Lopez* implicitly disavows such a proposition.

**18.** The plaintiffs' declaratory-judgment claim is also barred by sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex.2009) (holding that immunity

shields state and its subdivisions from declaratory-judgment claims seeking declaration that state violated statute but does not shield state officials in official capacity). Here, the plaintiffs' claim is barred because they brought suit against only TDPS and not its officials.

and dismiss the judgment rendered in favor of appellees, employees of Texas Department of Public Safety (DPS). The majority discards the 2004 jury verdict by finding that appellees' discrimination and retaliation claims brought under chapter 21 of the labor code were time-barred because there was no evidence that appellees filed "proper" administrative complaints during the applicable 180–day statutory period. *See* Tex. Lab.Code Ann. §§ 21.051, .055, .202 (West 2006).[1] The majority also vacates and dismisses appellees' claims brought under the Uniform Declaratory Judgments Act[2] by finding that they were "in fact" discrimination or retaliation claims and that the TCHRA remedies were exclusive. Because I would conclude that the district court had jurisdiction to hear appellees' TCHRA and declaratory judgment claims, I respectfully dissent.

### Procedural Background

On August 20, 2002, appellees brought this suit against DPS, seeking relief under the UDJA concerning the November 2001 promotion process of eleven Captain positions in the Narcotics Service.[3] Appellees alleged that DPS violated state law because the process was "rigged" to preselect the candidates that would be promoted and sought a declaration that "the promotions at issue in this case were not based on merit, in violation of Section 411.007(b) [of the government code]." *See*

Tex. Gov't Code Ann. § 411.007(b) (West Supp. 2009).[4] On the same day, appellees also brought suit against individual DPS supervisors in federal court concerning the November 2001 promotion process, alleging, among other claims, claims under the Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964.[5]

Appellees filed an amended petition in this action in January 2003. They continued to seek declaratory relief, but they also sought relief under both federal and state anti-discrimination laws, including the TCHRA, the ADEA, and Title VII. Appellees pleaded that they "have filed their complaints" with the Equal Employment Opportunity Commission as well as the TCHR, "received right-to-sue letters," and "fulfilled all conditions precedent to bringing this action." DPS shortly thereafter removed appellees' state claims to federal court, and the federal court consolidated the two suits. During the pendency of the consolidated action, DPS expressly admitted in its answer that all sixteen appellees had filed administrative complaints and received right-to-sue letters, and DPS did not contend that appellees had failed to exhaust their administrative remedies.

Following a summary judgment hearing and ruling in federal court that raised the specter of multiple appeals and trials, the parties agreed that appellees would not

1. The powers and duties of the Texas Commission on Human Rights ("TCHR") were transferred to the Texas Workforce Commission Civil Rights Division in 2004. *See* Tex. Lab.Code Ann. § 21.0015 (West 2006). Because appellees filed their administrative complaints with the TCHR, I refer to appellees' claims as their "TCHRA" claims.

2. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 2008).

3. DPS is divided into major divisions. One of its major divisions is Criminal Law Enforcement. Criminal Law Enforcement is subdivided into services, one of which is the Narcotics Service.

4. Section 411.007(b) had not been amended during the pendency of this suit. For convenience, I cite to the current version of the code.

5. *See* 29 U.S.C. §§ 621–634 (2009) (ADEA); 42 U.S.C. §§ 2000e–2000e–17 (2009) (Title VII).

pursue certain parallel federal claims and that appellees' remaining TCHRA claims and their declaratory claims would be remanded to state court.[6] In accordance with the parties' agreement, the federal court dismissed the parallel federal claims and remanded appellees' remaining state claims in December 2003.

In accordance with the parties' agreement, appellees filed an amended petition in December 2003, deleting their parallel federal claims.[7] DPS filed an answer to the amended petition in February 2004 and a plea to the jurisdiction in June 2004, contending that appellees' TCHRA claims were time-barred because they had failed to timely file their administrative complaints.[8] Attached to DPS's plea were copies of EEOC's respective notices to DPS that included copies of the charges of discrimination. DPS did not challenge the form or content of appellees' perfected charges of discrimination, see Tex. Lab. Code Ann. § 21.201 (West 2006), but only that the charges were filed outside the 180–day statutory deadline. See id. § 21.202. Assuming the limitations period began to run November 30, 2001, the date appellees were advised of the promotion decision, appellees were required to file their charges of discrimination by May 29, 2002.

Appellees responded to DPS's plea to the jurisdiction with argument and evidence. Among their arguments, they asserted that the summary judgment ruling in federal court raised the "specter of multiple trials and multiple appeals of common issues of fact," and "Plaintiffs and Defendants agreed—and the Court approved— of Plaintiffs voluntarily dismissing certain federal claims with the understanding that the parallel state-law claims would be remanded to state court for trial." Their evidence included:

- transcripts from the hearings in federal court on October 28, 2003, and October 31, 2003;
- affidavits from appellees' counsel, Maria Garza, Robert Ralls, and Kenny Foster;
- appellees' respective "Interoffice Memorandum," dated between May 14 to 22, 2002, advising DPS that they had "initiated the complaint process" with TCHR concerning the promotion process for "Captain, Narcotics" by "filing an external report, as indicated above";
- Garza's "Intake Questionnaire" to TCHR dated May 21, 2002;
- a letter dated May 14, 2002 from TCHR to DPS, notifying DPS that TCHR had received a "tendered document that constitutes an initial complaint" from Ralls and that "the perfected complaint will be amended to relate back to the date that the initial complaint was received";
- a "referral notice" from the TCHR to Ralls dated May 30, 2002, that his

6. The federal court denied summary judgment as to the discrimination claims of appellees Garza, Haire, and Lewis but granted it as to the discrimination claims of the other appellees. Each of appellee's claims for retaliation after the December 2001 captains promotion also remained after the summary judgment ruling.

7. Each of the appellees alleged retaliation claims under the TCHRA and declaratory judgment claims, but only Garza, Haire, and

Lewis alleged discrimination claims under the TCHRA.

8. In its plea to the jurisdiction, DPS also contended that sovereign immunity barred appellees' TCHRA claims because the employees were unable to support certain essential elements of their retaliation and discrimination claims under the TCHRA: an adverse action (retaliation), a causal link (retaliation), and pretext (discrimination and retaliation).

complaint was being referred to the EEOC for investigation;

- a letter dated August 20, 2002, from the EEOC to Ralls "acknowledg[ing] receipt of your charge" and requiring him to sign, date, and return the "EEOC Form 5" [the charge of discrimination];

- the federal court order dated November 7, 2003, in which the federal court granted in part and denied in part DPS's motion for summary judgment;[9] and

- the federal court order dated November 25, 2003, remanding the state court claims and memorializing the various rulings and agreements of the parties.

Garza averred that she filed a "charge of discrimination" within the 180–day statutory period:

> Based on my personal knowledge, approximately on or before May 21, 2002, I filed a charge of discrimination concerning the promotion announced on November 30, 2001, to become effective December 15, 2001, which is currently at issue in this lawsuit. Pursuant to DPS policy, on May 22, 2002, I provided Captain Esquivel with a memorandum providing the department with actual notice that I had filed a charge of discrimination. The document bearing my name and signature attached to DPS's plea to the jurisdiction is a perfected charge filed pursuant to the Texas Administrative Code Section 327.1(i), and relates back to my original charge filing.

Ralls and Foster similarly averred that they had "filed a charge of discrimination" on or before May 29, 2002, concerning the promotion announced November 30, 2001, and that the document bearing their respective name and signature attached to DPS's plea to the jurisdiction was the perfected charge that related back to their original charge filing.[10] Ralls also averred that he was "tasked with communicating with and ensuring that the other 15 plaintiffs followed the same procedure I did," and that he "confirmed" that each of the "other 15 plaintiffs" followed the same procedure that he did during the period May 14 to 22, 2002.

Appellees' counsel averred concerning the issue of exhaustion:

3. [I]n connection with the issue of exhaustion, on or before May 30, 2002, either myself or a member of my staff personally contacted each of the 16 clients to confirm that they had followed the procedure as described in the affidavit of Robert E. Ralls and that they had actually filed or cross-filed a charge with the [TCHR] on or before May 30, 2002. Each confirmed that they had.

4. Additionally, while this case was pending in federal court, the district court raised the issue of exhaustion *sua sponte* during a summary-judgment hearing. I pointed out that DPS had expressly admitted in its answer that all 16 Plaintiffs had filed charges and received right-to-sue letters. I also pointed out that this was not an issue raised by DPS. I

---

9. The federal court denied DPS's summary judgment as to the federal discrimination claims of Garza, Haire, and Lewis and ordered that the "state cause of actions for (1) declaratory judgment that Defendant DPS acted outside its statutory authority during the promotional procedure at issue by filling

the Captain positions without examining applicants based on merit, in violation of section 411.007(b) of the Texas Government Code; and (2) violations of the [TCHRA] REMAIN."

10. Appellees' perfected charges were dated between June 24, 2002, and January 9, 2003.

offered to gather that information if the Court so required to prove exhaustion, but the Court ruled that the admission by DPS was factually sufficient to support its jurisdiction, and DPS did not object to this representation during this hearing.

5. In light of the fact that DPS failed to contest jurisdiction until after this case has been pending for over two years, and the finding of the district court that it had jurisdiction over the TCHRA claims, our firm has not issued an open records act request to the TCHR, but will do so if the Court requires further proof of exhaustion. With the exception of the charge of [ ] Garza, we do not have in our possession a copy of the initial charge filed by the other 16 plaintiffs.

6. Furthermore, there is no dispute that each of the 16 Plaintiffs complied with the time limits for filing a federal discrimination claim. In the federal proceeding, for various reasons including judicial economy, each plaintiff agreed to waive his or her federal claim and proceed only under the TCHRA. As demonstrated by the attached transcript, the federal court was hesitant to approve this until it was reassured that the plaintiffs had viable state-court claims. The AG's office did not dispute this representation to the federal court. Also, the plaintiffs would not have consented to this agreement if there was any dispute as to exhaustion. Plaintiffs acted in reliance on the admission of DPS in its answer.

Appellees stated in their response that they did not have a copy of all the initial charges filed with TCHR regional offices and would issue an open records request to the extent the district court deemed it necessary. Appellees also sought leave to amend their complaint to add their parallel federal claims that were dismissed by the parties' agreement to the extent the district court deemed their TCHRA claims untimely because the federal statutory time period for filing an administrative complaint was 300 days. *See* 42 U.S.C. § 2000e–5(e)(1) (2009). DPS did not object to appellees' evidence, except for Foster's affidavit, and did not file any controverting evidence. After a hearing, the district court overruled DPS's objections to Foster's affidavit and denied the plea to the jurisdiction on July 21, 2004.[11]

Following a two-and-a-half week trial, the jury found that "DPS fail[ed] to conduct the November/December 2001 promotional process in a manner consistent with DPS[ ] written policies and procedures." The jury also found in favor of Garza on her discrimination and retaliation claims and Ralls on his retaliation claim, awarding them monetary damages.[12]

---

11. DPS appealed the denial of its plea to the jurisdiction by interlocutory accelerated appeal to this Court, but the interlocutory appeal remained pending at the time the district court rendered a final judgment on the merits in February 2005. This Court, in an opinion also authored by the same justice as the majority opinion here, dismissed the interlocutory appeal as moot in April 2005. *See Texas Dep't of Pub. Safety v. Alexander*, No. 03–04–00439–CV (Tex.App.-Apr. 14, 2005), *available at* http://www.3rdcoa.courts.state.tx.us/ opinions/Opinion.asp?OpinionID=13648. This Court stated in the opinion that appellant could raise issues concerning the denial of its plea to the jurisdiction in an appeal from the final judgment.

12. The jury found against Haire, Lewis, Foster, and Lord on their TCHRA claims. The remaining appellees did not submit discrimination or retaliation questions to the jury. Foster and Lord have cross-appealed.

Based on the jury's verdict and its equitable powers, the district court rendered judgment, ordering that Garza and Ralls recover monetary damages against DPS, permanently enjoining DPS from discriminatory and retaliatory conduct, and declaring "on all sixteen Plaintiffs' claims" that DPS failed to follow its written policies and procedures for selecting candidates in violation of state law, including section 411.007(b) of the Texas Government Code. *See* Tex. Gov't Code Ann. § 411.007(b). The district court also awarded appellees attorney's fees and costs.

DPS appeals the district court's judgment to this Court, but does not argue and the parties did not brief the jurisdictional grounds raised *sua sponte* by the majority. I limit my analysis today to the district court's jurisdiction to hear appellees' TCHRA and declaratory judgment claims. *See* Tex.R.App. P. 47.1, .5.

### TCHRA Claims

This Court, of course, may address the district court's subject matter jurisdiction *sua sponte. See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex.1993). I agree with the majority that the district court did not have jurisdiction of appellees' TCHRA claims if there was no evidence to support the district court's implied finding that appellees timely filed their administrative complaints. *See* Tex. Lab.Code Ann. § 21.202(a); *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex.2005) (legal sufficiency standard of review); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996) (timely filing administrative complaint mandatory and jurisdictional prerequisite to filing suit). I disagree, however, with the majority's application of the no-evidence standard of review to the evidence that supports the district court's implied finding.

There is no evidence to support an implied finding if the record discloses: (i) a complete absence of a vital fact; (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (iii) the evidence offered to prove a vital fact is no more than a scintilla; or (iv) the evidence establishes conclusively the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. This Court reviews the evidence in the light most favorable to the finding, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 807. The reviewing court must indulge every reasonable inference that would support the implied finding. *Id.* at 822.

Although the parties cannot confer jurisdiction by agreement, the parties can agree on the facts necessary to the court's jurisdiction. *See Kirk v. Head*, 137 Tex. 44, 152 S.W.2d 726, 728–29 (1941) ("[W]here potential jurisdiction is dependent on the existence of facts, the litigating parties to a cause can agree on the jurisdictional facts; and from such agreed facts the court can determine the question of jurisdiction."); *French v. Moore*, 169 S.W.3d 1, 10 (Tex.App.-Houston [1st Dist.] 2004, no pet.) ("Because the parties in this case agreed on certain facts, and based upon those facts, the trial court determined it had jurisdiction, we conclude that the county court at law properly determined that it had jurisdiction over this lawsuit."). Facts that are alleged by both parties or admitted in trial pleadings are established as a matter of law and do not require further proof. *See Shepherd v. Ledford*, 962 S.W.2d 28, 33 (Tex.1998) (stipulation is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto") (citation omitted); *Hennigan v. I.P. Petroleum*

*Co., Inc.,* 858 S.W.2d 371, 372 (Tex.1993) (judicial admission is a formal waiver of proof); *see also Houston Lighting & Power Co. v. City of Wharton,* 101 S.W.3d 633, 641 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (providing stipulation conclusive on issue addressed and parties estopped from claiming to the contrary).

In response to DPS's plea to the jurisdiction, appellees submitted evidence of the federal court proceeding, and DPS did not object to this evidence. Appellees' counsel averred that DPS expressly admitted in its answer in federal court that all sixteen plaintiffs had filed charges and received right-to-sue letters and that appellees agreed to dismiss their federal claims in reliance on DPS's admission in its answer. Transcripts from federal court hearings and the federal court's orders also show that the federal court raised the issue of jurisdiction with the parties, discussed the parties' agreement to dismiss the parallel federal claims and remand the state claims, and agreed to honor the parties' agreement.

Appellees' counsel and the federal court had the following exchange concerning the exhaustion of the Title VII and TCHRA claims for Haire, Lewis, and Garza at the summary judgment hearing without any objection by DPS's counsel:

> Appellees' Counsel: ... Your Honor raised concerns with our three Title VIIs, TCHRA Plaintiffs Haire, Lewis and Garza, and the concern was exhaustion. I cannot point to the record where I show that they have a right to sue letter, but we pleaded in our complaint that they had filed with the TCHRA and the EEOC and that they received right to sue letters. And in paragraph 107 of the answer, it says, defendants lack sufficient information to form beliefs as to the truth of the agreements of this paragraph except

that they admit that plaintiffs filed charges with the EEOC and TCHRA and received right to sue letters. ...

> Federal Court: Well, part of the problem—and I assume that their right to sue letters and timely suit was filed. [sic]

> Appellees' Counsel: Yes, sir.

> Federal Court: All right.

> Appellees' Counsel: I don't think that's an objection. I'd represent to the Court that we timely filed.

DPS's counsel remained silent.

At a subsequent hearing, counsel and the federal court also had the following exchange concerning the parties' agreement to dismiss the parallel federal claims and remand the state claims remaining after summary judgment:

> DPS's Counsel: There may be a way and that is if the state—remaining state law—purely state law claims go back to state court and the plaintiffs move to dismiss their—just the federal claims that are due to be tried, then you have, in effect—then, the plaintiffs are in a posture to cross-appeal that part of the summary judgment that dismissed claims that they wanted to try. And at the same time that the defendants appeal the denial of qualified immunity on the two 1983 and the Fifth Circuit considers it all at once and decides if there's any part of it that they want to let go or not.

> Federal Court: Of course, they'd be giving up their Title VII claims.

> DPS's Counsel: Well, that's what we discussed.

> Appellees' Counsel: Your honor, [DPS's counsel] and I have spoken about that and subject to what the Court is willing to do here, we are prepared to dismiss with prejudice the federal Title VII, remand the balance to state

court, the declaratory judgment action, and the state civil rights claims, have him perfect his appeal on the First Amendment issues, and then, we only have one trial in this court which—with all due respect, I would ask the Court to please consider that it makes more sense to just have one trial on these issues here and permit us just to do that. And [DPS's counsel] and I have spoken about it and it is entirely in the Court's discretion, but we have a basic agreement as a plaintiff and defendant that we're agreeable to doing that, your Honor.

Federal Court: Well, I don't feel too good that I feel like I'm forcing this to some degree. Well, I do that. And then, secondly, I'm a little worried. Of course, I know that y'all have good client control, obviously, but here without your clients, you're considering waiving a Title VII case.... The problem there is, do you have authority? Do you feel like you've got authority to waive all of those Title VII claims?

Appellees' Counsel: Yes, sir. We have spoken.

Federal Court: Okay.

\* \* \*

Appellees' Counsel: And if I could add, your Honor. We're waiving the Title VII, but they're essentially redundant claims. We don't feel like we're waiving any substantive rights if we waive the Title VII and proceed under the TCHRA because the standards are effectively the same and the remedies are comparable, if not almost exactly the same.

Federal Court: Oh, I see, you're going to take that into the state court. All right. I missed that. I'm sorry. All right. Well, what do you want me to do?

Appellees' Counsel: We would ask the Court to dismiss with prejudice the federal Title VII, enter whatever order the Court is—finds appropriate with respect to the First Amendment claims, remand to state court a declaratory judgment action. We will work out the logistics of that. We'll handle the state court civil action or civil rights claims and the dec[laratory] action in state court. And we'll deal with the First Amendment issues after the Fifth Circuit has spoken.

Federal Court: Okay.

\* \* \*

Federal Court: And then, as soon as y'all see the summary judgment rulings, then y'all tender me an agreed order on that, and we'll proceed on that basis.

Finding the parties' agreement furthering "the interests of both comity and judicial economy," the federal court ordered:

It is therefore **ORDERED** that the federal claims of Plaintiffs Garza, Haire, and Lewis, for violations of Title VII, the ADEA, and the First Amendment (under 42 U.S.C. § 1983), are **dismissed with prejudice,** by agreement of the parties. The parallel claims of Plaintiffs Garza, Haire, and Lewis, for violations of the TCHRA, arising out of the 2001 Narcotics Captain's promotions, and subsequent discrimination and retaliation, are **remanded** to the 200th Judicial District Court of Travis County, Texas . . . by agreement of the parties.

It is **FURTHER ORDERED** that the federal claims of all Plaintiffs for retaliation and discrimination that are currently ripe and that arise after the 2001 Narcotics Captain's promotions, are **dismissed with prejudice,** by agreement of the parties. The parallel claims for retaliation in violation of the TCHRA that

are currently ripe and that arise after the 2001 Narcotic's Captain's promotions, are **remanded** to the 200th Judicial District Court of Travis County . . . by agreement of the parties.

It is **FURTHER ORDERED** that the claims of all Plaintiffs to this lawsuit for declaratory and injunctive relief under state law are **remanded** to the 200th Judicial District Court of Travis County . . . by agreement of the parties.

In reaching its no-evidence finding, the majority fails to credit appellees' evidence concerning the federal proceeding, misapplying our standard of review. *See City of Keller,* 168 S.W.3d at 810. Based on this evidence, it is clear beyond cavil that the parties agreed to the jurisdictional fact that appellees timely filed their charges of discrimination. *See Kirk,* 152 S.W.2d at 728–29; *Shepherd,* 962 S.W.2d at 33; *French,* 169 S.W.3d at 10.[13]

But, even without the evidence concerning the federal court proceeding, the majority misstates the factual determination by framing it to be "whether the plaintiffs raised any evidence that they filed, on or

before May 29, 2002, an administrative complaint with TCHRA that met all the requirements listed in section 21.201 of the labor code and set forth the specific factual allegations upon which they later filed suit." *See* Tex. Lab.Code Ann. § 21.201.[14] At its core, the majority concludes that appellees' TCHRA claims are time-barred because appellees failed to show that the content of the documentation that they submitted to the TCHR during the allowable 180-day period contained "the components of a proper complaint." *See id.*

Appellees' uncontroverted evidence was that they timely filed their administrative complaints. Appellees stated in their respective memorandum that they had initiated the complaint process with TCHR, concerning the promotion process for "Captain, Narcotics" by "filing" a report, "as indicated above." Ralls averred that he "filed a charge of discrimination" timely and that the other appellees followed the same procedure that he did, and appellees' counsel averred that he had confirmed with each appellee that his or her

---

13. The right-to-sue letters are additional support that appellees timely filed their administrative complaints. *See City of La Joya v. Ortiz,* No. 13–06–401–CV, 2007 WL 293019, at *3, 2007 Tex.App. LEXIS 818, at *9 (Tex. App.-Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) ("[T]he fact that the Texas Workforce Commission issued a right to sue letter, instead of dismissing the complaint as untimely, is additional evidence that the complaint was timely filed."); *Westbrook v. Water Valley Indep. Sch. Dist.,* No. 03–04–00449–CV, 2006 WL 1194527, at *3, 2006 Tex.App. LEXIS 3845, at *10 (Tex.App.-Austin May 5, 2006, pet. denied) (mem. op.) ("Although an employee is not required to obtain a right to sue letter prior to filing suit, if the employee has received one, it evidences that she has exhausted her administrative remedies before the TCHR."); *see also* Tex. Lab.Code Ann. § 21.202(b) (West 2006) ("The commission shall dismiss an untimely complaint.").

14. The majority relies upon *Federal Express Corporation v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), "for the general principle that the complaint itself has significance and must contain certain substantive components." I agree that the perfected complaint must contain certain substantive information but disagree that a perfected complaint can only relate back to an initial complaint that contains all of the required information. *See* Tex. Lab.Code Ann. § 21.201(e), (f) (West 2006). The majority also miscites *Elgaghil v. Tarrant County Junior College,* 45 S.W.3d 133, 142 (Tex. App.-Fort Worth 2000, pet. denied). Our sister court addressed the limitations on a plaintiff's discrimination claims brought in a TCHRA suit to the "kind of discrimination like or related to the charge's allegations," but DPS does not contend that appellees allege a "kind of discrimination" that they failed to raise in their administrative complaints.

administrative complaint had been timely filed. It was also undisputed that appellees' perfected charges that were attached to DPS's plea to the jurisdiction complied with the form and content requirements of section 21.201 of the labor code, and that each appellee had received a right-to-sue letter from the TCHR. Therefore, the district court could have found, without reviewing the actual documentation appellees initially filed, that *any* omission or technical defect in the documentation did not prevent the properly perfected charges from relating back to the date the initial charges were filed. *Id.* § 21.201(e), (f) [15]; *see also City of Keller,* 168 S.W.3d at 822; *Hennigan,* 858 S.W.2d at 373 (verified complaint filed outside 180-day time period "relates back to, and satisfies *any* deficiencies in an unverified questionnaire" filed within the 180-day period) (emphasis added); *Texas Tech Univ. v. Finley,* 223 S.W.3d 510, 514–15 (Tex.App.-Amarillo 2006, no pet.) (court, drawing distinction between "original complaint" and "perfected complaint," concludes letter, the "original complaint," satisfied jurisdictional requirements). On this record, I would conclude that the failure to produce any actual documentation that appellees initially filed with TCHR did not preclude the district court from finding that the perfected charges related back to the date the initial charges were filed and, therefore, that appellees timely filed their administrative complaints.

Most disturbing is the majority's finding that there was no evidence that Garza or Ralls—the two appellees that recovered on their TCHRA claims—timely filed an administrative complaint. DPS argues that "thirteen [other than Garza and Ralls] failed to create a fact issue as to timely filed charges of discrimination," but that those thirteen did not recover on their TCHRA claims. DPS does not contend that Ralls and Garza failed to show that they timely filed administrative complaints. *See Hennigan,* 858 S.W.2d at 373; *Brammer v. Martinaire, Inc.,* 838 S.W.2d 844, 846–47 (Tex.App.-Amarillo 1992, no writ) (verified complaint relates back to the date the original complaint—an unverified questionnaire—was filed and satisfies any deficiencies).[16] Despite DPS's agreement of the jurisdictional facts as to Garza and Ralls, the majority proceeds with its own fact-finding to conclude that all the appellees failed to timely file their administrative complaints.

---

15. The relation back provisions of subsections (e) and (f) of section 21.201 provide:

(e) A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.

(f) An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

*See* Tex. Lab.Code Ann. § 21.201(e), (f); *see also id.* § 21.202(b) (commission shall dismiss untimely complaints).

16. In its renewed issues concerning the denial of its plea to the jurisdiction, DPS contends that the district court lacked jurisdiction over appellees' TCHRA retaliation claims because appellees "were unable to create a fact issue as to a causal link between their protected activity and their subsequent inability to promote" and that the district court erred in refusing to stay the trial during the pendency of the interlocutory appeal. I further observe that in the interlocutory appeal, which is no longer before us, DPS also did not urge that appellees Garza and Ralls had failed to create a fact issue as to the timeliness of their administrative complaints. In its briefing in the interlocutory appeal, DPS stated that "Garza and Ralls provided evidence of their submission of the questionnaire referred to in *Hennigan* and *Brammer.*"

In its analysis concerning Garza, the majority concedes that a timely filed intake questionnaire may satisfy section 21.202 of the labor code and that Garza produced her intake questionnaire in response to DPS's plea to the jurisdiction, but finds, nonetheless, there was no evidence to support timeliness. Crucial to the majority was the lack of a "file stamp" on Garza's intake questionnaire to prove timely receipt by the TCHR. Without a file stamp or other notation on the questionnaire, the majority concludes that there is no "logical bridge" between the intake questionnaire and the timely filing of that questionnaire. But the intake questionnaire is dated May 21, 2002, and Garza averred that "[o]n or before May 21, 2002, I filed a charge of discrimination concerning the promotion announced on November 30, 2001." [17] Appellees' counsel also averred that the only "initial charge" that they had in their possession was Garza's. The majority does not address counsel's affidavit and discounts Garza's because she did not specifically reference the intake questionnaire but the "charge of discrimination." But, a reasonable inference is that Garza and appellees' counsel were referring to her "intake questionnaire" when they referred to her initial "charge" that was filed within the 180–day period. *See City of Keller*, 168 S.W.3d at 822; *see also Stanley Stores, Inc. v. Chavana*, 909 S.W.2d 554, 559 (Tex.App.-Corpus Christi 1995, writ denied) (whether and when EEOC received discrimination complaint generally fact issue for fact-finder).

As to Ralls's evidence, the majority similarly finds that, although there was some evidence he filed a document complaining of discrimination within the 180–day period, there was no evidence of its content to show that it was "proper." But, Ralls averred that he filed a charge of discrimination timely, and the submitted evidence included the letter from TCHR to DPS dated May 14, 2002—within the 180 day period—advising DPS that Ralls had "tendered [a] document that constitutes an initial complaint" and that the perfected complaint would relate back to the date of his initial complaint. This letter supports a reasonable inference that the document Ralls filed constituted an initial complaint that allowed his perfected complaint to relate back to its filing date and further supports the district court's implied finding of timeliness. [18] *See City of Keller*, 168

**17.** Further, DPS's counsel elicited the following testimony from Garza on cross-examination:

Q. Nonetheless, at some point in the spring of 2002 you filed charges, a charge of discrimination with the [TCHR], correct?
A. That was in early May.
Q. Well, let's be clear. In early May you contacted the [TCHR], right?
A. No sir. I submitted—actually I went down there and picked up the application, filled out the application and submitted it.
\* \* \*
Q. All right, you went down there, and on that date they gave you a packet of materials, which you filled out, right?
A. Yes, sir.
Q. And by doing that you initiated the process of filing a charge with the [TCHR]?

A. That's correct, sir.

**18.** DPS's counsel elicited the following testimony from Ralls on cross-examination:

Q. . . . Like some of the other plaintiffs have testified, is it correct that you at some point contacted the [TCHR]?
A. Yes, sir.
Q. And you got some sort of packet from them?
A. Yes, sir, and a questionnaire.
Q. All right. And you filled that out and sent it back to them, right?
A. Yes, sir.
Q. And then they sent you a formal charge?
A. Yes, sir.
Q. And you submitted that?
A. Yes, sir.

S.W.3d at 822. Irrespective of the other appellees' evidence of timeliness, I would conclude that the evidence was legally sufficient to support an implied finding that Garza and Ralls timely filed their administrative complaints to support the district court's jurisdiction to hear their TCHRA claims. *See id.*

### Declaratory Judgment Claims

The majority holds that the district court did not have jurisdiction over appellees' declaratory judgment claims because the TCHRA is the exclusive statutory remedy available for appellees' claims. To reach its holding, the majority relies on its findings of fact that appellees failed to timely file their administrative complaints and their declaratory judgment claims were "in fact" employment discrimination claims requiring them to be brought under and satisfy the requirements of the TCHRA. The majority again ignores the parties' arguments on appeal, as well as appellees' pleaded claims for declaratory relief.

Appellees sought a declaration that the November 2001 promotion process violated state law and departmental policy, including section 411.007(b) of the government code. *See* Tex. Gov't Code Ann. § 411.007(b). The jury found that DPS "fail[ed] to conduct the November/December 2001 promotional process in a manner consistent with DPS[ ] written policies and procedures." Consistent with the jury's finding, the district court declared:

> It is **FURTHER DECLARED** and **ADJUDGED** on all sixteen Plaintiffs' claims that DPS is required by law to follow its written policies and procedures for selecting candidates based on a fair and competitive process; that the Department failed to follow this law and policy with respect to the 2001 Captain's promotional process; and that senior officials intentionally circumvented this law and manipulated the process to promote eleven pre-selected candidates. Plaintiffs are entitled to a declaration that the 2001 Captain's promotion process was not based on merit in violation of state law and departmental policy, including § 411.007(b) of the Texas Government Code.

DPS does not contend that the district court was without jurisdiction to hear appellees' declaratory judgment claims because they were "in fact" TCHRA claims or that there was no evidence to support the jury's finding that DPS had violated its policies.[19] Instead, DPS concedes that there was evidence that DPS violated section 07.26 of its general manual that requires that each promotion board member independently reach its decision. Similarly, DPS's plea to the jurisdiction only

---

19. DPS challenges appellees' standing, which is an element of subject matter jurisdiction, to seek a prospective injunction concerning DPS's promotions because four out of six of the members on the promotion board have retired, an argument not addressed by the majority. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444–45 (Tex. 1993) (standing element of subject matter jurisdiction). DPS also argues on appeal that appellees should have sued DPS officials and not DPS directly under the UDJA. The majority agrees, concluding that appellees' declaratory judgment claims are also barred by sovereign immunity because they brought suit only against DPS, and not its officials. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 373 (Tex.2009). Because the Texas Supreme Court only recently clarified the proper party to sue, at a minimum, I would grant appellees' request to remand to substitute the correct parties if necessary. *See Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex.1993) (remanding cause in the interests of justice in light of new standard announced by court); *Fanning v. Fanning,* 847 S.W.2d 225, 226 (Tex.1993) (per curiam) (op. on reh'g) (remand in interests of justice after law changed while appeal was pending); *see also* Tex. R.App. P. 43.3(b).

challenged appellees' TCHRA claims. Further, in its motion for judgment notwithstanding the verdict, DPS argued that appellees' discrimination and retaliation claims were "conceptually distinct" from their allegations of "rigging" the promotion process:

> [T]he UDJA-related issue of whether the promotion board members colluded to rig the November 2001 promotions is conceptually distinct from the issue of whether the decision-makers in the November 2001 and subsequent promotions were motivated by discrimination or retaliation. That is, if the promotion process complied with the relevant DPS procedures, a declaratory judgment must be denied even if the decision-makers were improperly motivated. Conversely, if the promotions were not discriminatory or retaliatory, the failure to follow DPS procedure is irrelevant to the [TCHRA] claims.

The majority equates appellees' declaratory claims with the plaintiff's Whistleblower Act claims in *City of Waco v. Lopez*, 259 S.W.3d 147 (Tex.2008). But, in that case, the plaintiff only alleged retaliatory discharge for reporting age and race discrimination in violation of the City's EEO policy. *Id.* at 149–50, 156. In contrast, appellees' declaratory judgment claims do not depend on a finding of discrimination or retaliation as a motivating factor—as recognized by DPS, but not the majority. The employee's Whistleblower

Act claims in *Lopez* are not analogous here.

I would conclude that the district court had jurisdiction of appellees' declaratory judgment claims. *See Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149 (Tex. App.-Austin 1998, no pet.). In *Moore*, this Court held that the trial court had jurisdiction to hear the employee's declaratory claim that DPS acted outside its statutory authority in filling four high-ranking positions without examining the applicants on merits. *Id.* at 153–54. The "crux" of the issue in *Moore* was the application of section 411.007(b) to the advancement of personnel within DPS through promotion or appointment. *See id.* at 154. Appellees sought a similar declaration here.

## CONCLUSION

After allowing this case to languish on appeal and failing to act in a timely manner on the accelerated interlocutory appeal, the majority avoids addressing the issues raised by the parties by vacating and dismissing appellees' claims on jurisdictional grounds. I lament the rogue nature of the majority opinion that further delays the justice long sought by all parties in this appeal. In the face of strong evidence of "rigging" the promotion process, clear and timely complaints—particularly Garza's and Ralls's—and DPS's litigation strategy, it is surprising I am sure to the parties that the appeal not be determined on a basis presented by the parties themselves.[20] Because I would conclude

**20.** In its initial brief, DPS sought for this Court to reverse the district court's judgment and render judgment in its favor or, alternatively, to reverse and remand. In its reply brief, DPS sought reversal and that the injunction be vacated because the district court exceeded its authority in its permanent injunction. Additionally, DPS contended that the retaliation claims could be considered by this Court on the jurisdictional grounds raised in the interlocutory appeal and renewed in

this appeal that appellees "were unable to create a fact issue as to a causal link between their protected activity and their subsequent inability to promote." *See supra* note 16. DPS further stated that, if this Court remands for "erroneous denial of the stay," "[t]he TCHR Act causes of action that would be remanded for retrial would be the gender discrimination claim of Garza, and four retaliation claims-Garza and Ralls (appealed by

that the district court had jurisdiction to hear appellees' TCHRA and declaratory judgment claims, I respectfully dissent.[21]

DPS) and Lord and Foster (appealed by the plaintiffs)."

21. Had appellees failed to exhaust their administrative remedies, they would have been allowed to amend their pleadings to allege their parallel federal claims that they dis- missed based upon DPS's agreement. *See County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex.2002) (plaintiffs should be given opportunity to cure jurisdictional defects in pleadings).