ACCEPTED
01-14-00417-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/5/2015 4:38:36 PM
CHRISTOPHER PRINE
CLERK

# NO. 01-14-00417-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
6/5/2015 4:38:36 PM
CHRISTOPHER A. PRINE
Clerk

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

NICK YEH, INDIVIDUALLY, ASHDON INC. D/B/A IMPRESSION BRIDAL, AND
EMME BRIDAL, INC.,

Appellants/Cross-Appellees,

v.

ELLEN CHESLOFF,

Appellee/Cross-Appellant.

On Appeal from the 268th Judicial District Court,
Fort Bend County, Texas, No. 09-DCV-174184

## APPELLEE'S/CROSS-APPELLANT'S BRIEF

**Thad D. Spalding**
State Bar No. 00791708
tspalding@texasappeals.com
**Peter M. Kelly**
State Bar No. 00791011
pkelly@texasappeals.com
KELLY, DURHAM & PITTARD, LLP
PO Box 224626
Dallas, TX 75222
(214) 946-8000 (Telephone)
(214) 946-8433 (Facsimile)

**Ronald M. Estefan**
State Bar No. 00785851
ron@ronestefanlaw.com
THE ESTEFAN FIRM, P.C.
2306 Mason Street
Houston, Texas 77006
(713) 333-1100
(713) 333-1101 (Fax)

**COUNSEL FOR APPELLEE/CROSS-APPELLANT**

**ORAL ARGUMENT REQUESTED\***

## STATEMENT REGARDING ORAL ARGUMENT

Appellants do not request oral argument and claim that it is not necessary to the issue presented by their appeal. Appellee/Cross-Appellant agrees that Appellants' "jurisdictional" argument is straightforward, albeit not for the reasons they present. This Court can dispose of that argument and affirm the judgment on Appellee's sexual harassment claims without the need for much discussion.

Appellee/Cross-Appellant, however, believes that this Court can benefit from oral argument with respect to the points she raises on cross-appeal. The issues of back pay and attorney's fees in the civil rights context are somewhat less straightforward and more complicated than the single issue raised by Appellant and, accordingly, the undersigned believes that oral argument on those issues could be helpful.

# TABLE OF CONTENTS

PAGE

STATEMENT REGARDING ORAL ARGUMENT ........................................................... ii

TABLE OF AUTHORITIES ............................................................................................. v

STATEMENT OF THE CASE ...........................................................................................x

ISSUES PRESENTED .................................................................................................. xiii

RECORD ON APPEAL ............................................................................................... xiii

I.      STATEMENT OF FACTS ................................................................................2

        A.      Chesloff's request for back pay ........................................................2

        B.      Chesloff's request for attorney's fees .............................................3

II.     SUMMARY OF THE ARGUMENT...................................................................5

III.    ARGUMENT AND AUTHORITIES ..................................................................6

        A.      Chesloff was entitled to judgment on her sexual
                harassment claims ..............................................................................6

                1.      Standard of review – legal sufficiency ................................6

                2.      Chesloff's charge of discrimination related
                        back to her timely-filed intake questionnaire ....................8

        B.      The trial court abused its discretion when it denied
                Chesloff her back pay ......................................................................13

                1.      Standard of review – abuse of discretion ..........................14

2. The trial court abused its discretion when it excluded evidence of Chesloff's back pay...........................15

3. This Court should render judgment in Chesloff's favor on her claim for back pay.........................16

C. The trial court abused its discretion when it drastically reduced the attorney's fees to which Chesloff was entitled.....................................................17

1. Standard of review – abuse of discretion ...........................17

2. Proving fees under the TCHRA...........................................18

3. The hourly rate charged by Chesloff's counsel was reasonable..................................................................20

4. The hours spent by Chesloff's counsel were reasonable..................................................................21

5. The relevant factors do not warrant a reduction in Chesloff's segregated attorney's fees.............................23

IV. CONCLUSION & PRAYER ...............................................................29

CERTIFICATE OF COMPLIANCE ..............................................................33

CERTIFICATE OF SERVICE .....................................................................33

iv

# TABLE OF AUTHORITIES

CASES                                                                                                          PAGES

*Arthur Andersen & Co. v. Perry Equip. Co.,*
  945 S.W.2d 812 (Tex. 1997) ..................................................................19

*Autozone, Inc. v. Reyes,*
  272 S.W.3d 644 (Tex. App.—Corpus Christi 2006), *rev'd on other grounds,*
  272 S.W.3d 588 (Tex. 2008).................................................................17

*Black v. SettlePou, P.C.,*
  732 F.3d 492 (5th Cir. 2013) ................................................... 18, 26, 30

*BMC Software Belgium, N.V. v. Marchand,*
  83 S.W.3d 789 (Tex. 2002).....................................................................7

*City of Keller v. Wilson,*
  168 S.W.3d 802 (Tex. 2005)..................................................................8

*City of La Joya v. Ortiz,*
  No. 13-06-401-CV,
  2007 WL 293019 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.)...........12

*City of Riverside v. Rivera,*
  477 U.S. 561 (1986).............................................................. 26, 27, 28

*City of Sugar Land v. Kaplan,*
  449 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ...............12

*Clark v. Craft Foods, Inc.,*
  18 F.3d 1278 (5th Cir. 1994) ...............................................................10

*Dallas County Sw. Inst. of Forensic Sci. & Med. Exam'r Dep't v. Ray,*
  400 S.W.3d 219 (Tex. App.—Dallas 2013, pet. denied)................................11

CASES (CONT'D)                                                                                  PAGES

*Dubai Petroleum Co. v. Kazi,*
    12 S.W.3d 71 (Tex. 2000)...........................................................................7

*Edwards v. Aaron Rents, Inc.,*
    482 F. Supp. 2d 803 (W.D. Tex. 2006) ...............................................16

*El Apple I, Ltd. v. Olivas,*
    370 S.W.3d 757 (Tex. 2012)..............................................................passim

*Green v. Administrators of the Tulane Educ. Fund,*
    284 F.3d 642 (5th Cir. 2002)..................................................................26

*Griffin v. City of Dallas,*
    26 F.3d 610 (5th Cir. 1994)......................................................................9

*Hamer v. Ewing Constr. Co.,*
    No. C-07-93, 2007 WL 1231681 (S.D. Tex. Apr. 24, 2007) ...........................12

*Hansen v. AON Risk Servs. of Tex., Inc.,*
    No. Civ. A. H-05-3437, 2006 WL 846363 (S.D. Tex. Mar. 31, 2006) .............12

*Hennigan v. I.P. Petroleum Co., Inc.,*
    858 S.W.2d 371 (Tex. 1993)............................................................. 10, 11

*Jackson v. Host Int'l, Inc.,*
    426 Fed. App'x 215 (5th Cir. 2011)...................................... 18, 29, 30

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir.1974).................................................. 19, 25

*Lewallen v. City of Beaumont,*
    394 Fed. App'x 38 (5th Cir. 2010)........................................... 26, 28

*Perdue v. Kenny A. ex. rel. Winn,*
  559 U.S. 542 (2010)..................................................................... 18, 29

*Prairie View A&M Univ. v. Chatha,*
  381 S.W.3d 500 (Tex. 2012)...................................................................7

*Price v. Southwestern Bell Tele. Co.,*
  687 F.2d 74 (5th Cir. 1982)..................................................................10

*Santi v. Univ. of Tex. Health Sci. Ctr. at Houston,*
  312 S.W.3d 800 (Tex. App.—Houston [1st Dist.] 2009, no pet.) .................13

*Specialty Retailers, Inc. v. DeMoranville,*
  933 S.W.3d 490 (Tex. 1996)...................................................................9

*State v. Cent. Expressway Sign Assocs.,*
  302 S.W.3d 866 (Tex. 2009)..................................................................15

*Tex. Dep't of Public Safety v. Alexander,*
  300 S.W.3d 62 (Tex. App.—Austin 2009, pet. denied).................... 7, 8, 10, 11

*Texas Parks & Wildlife Dep't v. Miranda,*
  133 S.W.3d 217 (Tex. 2004)...................................................................7

*Tollett v. City of Kemah,*
  285 F.3d 357 (5th Cir. 2002)................................................................21

*Tony Gullo Motors I, L.P. v. Chapa,*
  212 S.W.3d 299 (Tex. 2006).................................................................22

*U-Haul Int'l, Inc. v. Waldrip,*
  380 S.W.3d 118 (Tex. 2012).................................................................14

*Wal-Mart Stores, Inc. v. Canchola,*
  64 S.W.3d 524 (Tex. App.—Corpus Christi 2001) ......................................12

# TABLE OF AUTHORITIES (CONT'D)

CASES (CONT'D)                                                                PAGES

*West v. Nabors Drilling USA, Inc.,*
   330 F.3d 379 (5th Cir. 2003) ............................................................26

*Williams v. Vought,*
   68 S.W.3d 102 (Tex. App.—Dallas 2001, no pet.) .............................................9

*Williams-Pyro, Inc. v. Barbour,*
   408 S.W.3d 467 (Tex. App.—Dallas 2013, pet. denied)................................23

STATUTES & REGULATIONS

29 C.F.R. § 1601.12(b) ............................................................11

40 Tex. Admin. Code § 819.41(g) ............................................................11

Tex. Labor Code § 21.201 ........................................................ 10, 11

Tex. Labor Code § 21.202(a)............................................................9

Tex. Labor Code § 21.259(a)............................................................17

RULES

Tex. R. App. P. 43.3 ............................................................17

OTHER AUTHORITIES

State Bar of Texas, *Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment* PJC 115.30 (2014) ............................................................15

## STATEMENT OF THE CASE

**Nature of the Case.** This case arises out of a pervasive culture of sexual harassment created by Nick and Mike Yeh and their bridal dress and formal gown companies, Ashdon, Inc. d/b/a Impression Bridal ("Impression") and Emme Bridal, Inc. ("Emme"). Ellen Chesloff worked for Impression and Emme from January 2006 until she ultimately had to resign in June 2009 because of the sexual harassment she was forced to endure. Almost immediately, Nik Yeh sued Chesloff for slander per se and Impression and Emme sued Chesloff for breach of fiduciary duty and, later, business disparagement and negligence. (1 CR 12-24; 4 CR 1265-66). Chesloff, after filing an intake questionnaire and charge of discrimination with the EEOC and receiving her "right to sue" letter, counterclaimed for sexual discrimination and harassment, retaliation, and for intentional infliction of emotional distress. (1 CR 28-29). Yeh, Impression, and Emme filed a plea to the jurisdiction, arguing that Chesloff's charge of discrimination was untimely and, therefore, her claims under the Texas Commission on Human Rights Act ("TCHRA") were barred. (1 CR 83-113).

**Trial Court.** The Honorable Brady Elliott, Presiding Judge, and the Honorable Larry Wagenbach, Visiting Judge, 268th Judicial District Court, Fort Bend County, Texas.[1]

**Trial Court's Disposition.** The trial court denied Yeh, Impression, and Emme's plea to the jurisdiction. (2 RR 20).

Following a seven day trial, and in response to a 76-page, 67-question jury charge, the jury returned its verdict, rejecting every single one of the claims by Yeh, Impression, and Emme. (4 CR 1339-95). Instead, the jury found in favor of Chesloff and awarded her damages on her sexual harassment claims against both Impression and Emme, and on her intentional infliction of emotional distress claim against Emme. (4 CR 1396-

---

[1] Judge Wagenbach presided over the last four days of trial.

99, 1408-9). The jury rejected Chesloff's claim of retaliation.[2] (4 CR 1400, 1402).

Chesloff moved for entry of judgment on the verdict, and Yeh, Impression, and Emme filed a motion for judgment notwithstanding the verdict, again claiming that Chesloff's sexual harassment claims were barred, but also challenging the intentional infliction of emotional distress claim. (4 CR 1561-68). The trial court denied the challenge to Chesloff's sexual harassment verdict, but granted judgment notwithstanding the verdict on the intentional infliction of emotional distress claim.[3] (15 RR 13).

Chesloff also moved for attorney's fees and costs under the TCHRA. (5 CR 1693). Chesloff asked for approximately $300,000 in litigation attorney's fees and approximately $100,000 in conditional appellate fees. (5 CR 1702-3).

On April 25, 2014, the trial court signed a final judgment in Chesloff's favor, but reduced the requested trial attorney's fees and the conditional appellate fees by approximately two-thirds. (5 CR 1810-11).[4] Yeh,

---

[2] Contrary to Appellants' prediction in their brief, *see* Appellants' Brief at 58-64, Chesloff does not appeal the jury's failure to find retaliation.

[3] Chesloff does not appeal the trial court's judgment notwithstanding the verdict on her intentional infliction of emotional distress claim either.

[4] The trial court initially dated the Final Judgment "April 20, 2014," which was a Sunday. (5 CR 1901-2). The trial court attempted to correct that error by simply handwriting in the correct date, April 25, 2014. (5 CR 1812, 1901). Apparently concerned about handling this clerical error in this manner, the trial court—on its own motion—entered an "Order for Judgment Nunc Pro Tunc," ordering that a corrected Final Judgment be submitted for entry. (5 CR 1901). On May 12, 2014, a "Judgment Nunc Pro Tunc" was signed that is identical in content to the Final Judgment.

The "Judgment Nunc Pro Tunc," however, does not appear in the Clerk's Record. Although it has no impact on the timeliness of any post-judgment motions or the parties' notices of appeal, in the interest of having a complete record before this Court, the undersigned will ask—in conjunction with the filing of this brief—that a Supplemental Record be filed in this appeal to include the May 12, 2014 "Judgment Nunc Pro Tunc."

Impression, and Emme noticed their appeal of the judgment, and Chesloff cross-noticed her appeal. (5 CR 1906, 1923).

<u>ISSUES PRESENTED</u>

**Restatement of Appellants' Issue:**

1.     *Jurisdiction.*  Did the trial court have authority to enter judgment in Ellen Chesloff's favor on her sexual harassment claims where Chesloff's intake questionnaire to the EEOC was timely filed within 180 days of the date Chesloff resigned and the last date of alleged sexual harassment, and her formal charge of discrimination filed one month later relates back to the filing of the intake questionnaire?

**Cross-Appeal Points:**

1.     *Back pay.*  Did the trial court abuse its discretion in excluding evidence of, and ultimately refusing to enter judgment in Chesloff's favor on, her claim of back pay where all of the evidence supporting her claim was timely disclosed in discovery?

2.     *Attorney's Fees.*  Did the trial court abuse its discretion in reducing the trial and appellate attorney's fees that, using the lodestar method, Chesloff's counsel proved were reasonable?

<u>RECORD ON APPEAL</u>

<u>Clerk's Record</u>.  This appeal consists of a five-volume, consecutively-paginated Clerk's Record.  Documents referenced in the Clerk's Record will be cited by volume and page number as "(__ CR __)."

<u>Reporter's Record</u>.  This appeal also consists of a 17-volume Reporter's Record.  The Reporter's Record is made up of the following:

Volume 1:        Master index.

Volume 2:        Hearing on Appellants' Plea to the Jurisdiction

Volume 3: Pretrial matters.

Volume 4: Pretrial matters and voir dire.

Volumes 5-14: Trial on the merits.

Volume 15: Hearing on post-trial motions, including Appellants' Motion for Judgment Notwithstanding the Verdict and Appellee's Motion on Attorney's Fees.

Volume 16: Second hearing on post-trial motions, including Appellee's Motion on Attorney's Fees.

Volume 17: Exhibits.

Citations to the Reporter's Record will be by volume and page number as "(___ RR ___)."

**Appendix**. Any references to record items that are also in the Appendix will be cited as "(App. Tab ___)."

# NO. 01-14-00417-CV

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

NICK YEH, INDIVIDUALLY, ASHDON INC. D/B/A IMPRESSION BRIDAL, AND
EMME BRIDAL, INC.,

Appellants/Cross-Appellees,

v.

ELLEN CHESLOFF,

Appellee/Cross-Appellant.

On Appeal from the 268th Judicial District Court,
Fort Bend County, Texas, No. 09-DCV-174184

## APPELLEE'S/CROSS-APPELLANT'S BRIEF

Appellee/Cross-Appellant Ellen Chesloff files this Brief to respond to the "jurisdictional" argument raised by the Appellants, and to present cross-issues regarding: (1) the trial court's exclusion of evidence regarding, and corresponding refusal to award, back pay; and (2) the trial court's drastic reduction of the attorney's fees to be paid to Chesloff's counsel for trial and appeal.

# I.  STATEMENT OF FACTS

In large measure, Appellants accurately state the facts relevant to this appeal.  And, although they understate the numerous incidents of sexual harassment, Appellants do not challenge the jury's findings of sexual harassment (other than to argue that the trial court did not have jurisdiction to enter judgment on those findings) making rehashing that evidence and those incidents here unnecessary.

Chesloff, however, raises two points on cross appeal regarding the trial court's exclusion of evidence of, and subsequent refusal to award, back pay, and the trial court's drastic reduction of the attorney's fees Chesloff requested.  Understandably, facts related to those issues were not addressed by Appellants' brief, so they will be addressed here.

## A.  Chesloff's request for back pay.

As part of her sexual discrimination and harassment claims under the Texas Commission on Human Rights Act ("TCHRA"), Chesloff requested back pay.  (1 CR 30).  In her September 1, 2010 deposition, Appellants' counsel questioned Chesloff regarding that claim.  (5 CR 1920 [153:8-154:16]).  Chesloff explained that she was making an annual salary of $60,000 when she resigned, and—at least at the time of her deposition—was making only

2

$48,000 with a new company, and was therefore seeking to recover the difference in what she was making now versus what she was making when she was forced to resign. (5 CR 1920 [153:19-154:7]).

At trial, Chesloff attempted to present this same testimony, but Appellants' counsel objected, claiming that Chesloff's back pay damages had never been disclosed in response to requests for disclosure. (12 RR 196:12-16). In response, Chesloff's counsel argued that the information had been provided at her deposition. (12 RR 197:2-4). The trial court sustained Appellants' objection and excluded Chesloff's back pay testimony. (12 RR 197:5). Chesloff made an offer of proof at trial which closely mirrored her deposition testimony, (13 RR 4-7), and re-urged the issue in her Motion for New Trial and Motion to Modify Judgment. (5 CR 1913-15).

## B. Chesloff's request for attorney's fees.

Following her success at trial on the sexual harassment claims against both Impression and Emme, Chesloff filed a motion asking that she be awarded her attorney's fees and costs pursuant to the TCHRA. (5 CR 1693-

1704).[5] That motion was supported by the affidavits of Chesloff's trial counsel, Ron Estefan and Gene Shioda, who each submitted billing records detailing their time spent on the case from its inception. (5 CR 1705-61). Estefan's and Shioda's time, on a case that was four-and-a-half years old, totaled 721 hours.[6] (5 CR 1702-3).

Estefan's and Shioda's affidavits, as well as the affidavits of two other experienced employment attorneys, Trang Tran and Margaret Harris, also testified to a reasonable hourly rate of $400 per hour. (5 CR 1742 at ¶4; 1760 at ¶4; 1762 at ¶¶4, 6; 1765 at ¶¶ 6, 8). So, Chesloff requested litigation attorney's fees totaling approximately $304,400.[7] (5 CR 1425-26). Following an April 24, 2015 hearing on Chesloff's motion, the trial court took the fees issue under advisement. (16 RR 13). The next day, the trial court signed a final judgment in favor of Chesloff on her sexual harassment claims, but

---

[5] Chesloff amended her motion following a March 21, 2014 hearing based on the trial court's request that Chesloff resubmit her claim for fees, but segregate fees related to her sexual harassment claims from all of the other claims. (15 RR 17-18).

[6] This total represented a 32% reduction from the total time documented in Chesloff's original motion for attorney's fees based on Estefan and Shioda's segregation of fees related just to the harassment claims. *Compare* (4 CR 1425-26) *with* (5 CR 1702-3).

[7] Chesloff also requested conditional appellate fees of: (1) $68,000 for an appeal to the court of appeals; (2) $25,500 for an appeal to the Texas Supreme Court; (3) $42,500 in the event the Texas Supreme Court asked for full briefing on the merits; and (4) $34,000 in the event the Texas Supreme Court asked for oral argument. (5 CR 1703).

drastically reduced Chesloff's litigation attorney's fees and conditional appellate fees by two-thirds. (5 CR 1810-11).

## II.    SUMMARY OF THE ARGUMENT

Appellants concede the jury's findings of sexual harassment.  They have not challenged those substantive findings here.  Rather, Appellants' sole point is that the trial court was without jurisdiction to enter judgment on Ellen Chesloff's claims for, and the jury's findings of, sexual harassment because Chesloff did not timely file her charge of discrimination, as required by the Texas Commission on Human Rights Act ("TCHRA").  Appellants are wrong, since Chesloff's intake questionnaire to the EEOC was filed timely, and, as a matter of law, any subsequent, more formal charge of discrimination related back to that questionnaire.  Chesloff's EEOC complaint was therefore timely and the trial court had the authority to enter judgment in Chesloff's favor.

The trial court did, however, commit error with respect to Chesloff's claims for back pay and attorney's fees.  The trial court effectively denied Chesloff any recovery for back pay when it excluded her testimony on the subject based on the mistaken belief that her testimony had not been disclosed in discovery.  Because Chesloff's testimony had been disclosed in

5

her deposition testimony three-and-a-half years before trial, the trial court abused its discretion in excluding the testimony at trial and that exclusion was harmful because it effectively precluded any recovery of back pay.

The trial court also abused its discretion when it drastically reduced the litigation and conditional appellate attorney's fees Chesloff was entitled to recover. Using the lodestar method, Chesloff's counsel established by affidavit and detailed billing records the reasonable rate for her counsel's time and the reasonable hours related to the sexual harassment claims. Without stating its reasons for doing so, and without any valid basis for doing so, the trial court reduced the requested fees by two-thirds. This was error too that warrants correction here.

### III. ARGUMENT AND AUTHORITIES

**A. Chesloff was entitled to judgment on her sexual harassment claims.**

**1. Standard of review – legal sufficiency**

Impression and Emme's challenge to the timeliness of Chesloff's EEOC complaint is a challenge to the existence of facts sufficient to support Chesloff's exhaustion of her administrative remedies.[8] *See Tex. Dep't of Public*

---

[8] Appellants label this a jurisdictional issue. Although a number of courts still refer to the failure to exhaust administrative remedies as an issue of "jurisdiction," the Texas Supreme Court indicates that this is incorrect and that, when the claims involve private

*Safety v. Alexander,* 300 S.W.3d 62, 71-72 (Tex. App.—Austin 2009, pet. denied). The trial court was therefore required to consider the relevant evidence submitted by the parties and resolve Appellants' challenge based on undisputed facts or its own fact findings. *See Texas Parks & Wildlife Dep't v. Miranda,* 133 S.W.3d 217, 226-27 (Tex. 2004). Where, as here, the trial court did not issue findings of fact and denied Appellants' plea, this Court must presume that the trial court made a factual finding that Chesloff timely filed her complaint. *See Alexander,* 300 S.W.3d at 72.

On appeal, the trial court's fact findings—including implied ones—may be challenged for legal sufficiency. *See id.* (citing *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002)). By challenging the trial court's implied finding that Chesloff's complaint was timely filed, Appellants challenge the legal sufficiency of that finding. *See id.* To prevail on its challenge, Appellants are required to establish that there is no evidence to support the trial court's implied finding that Chesloff timely filed a proper complaint. *See id.*

---

litigants, the exhaustion of administrative remedies is simply a mandatory "statutory prerequisite" to suit. *See Prairie View A&M Univ. v. Chatha,* 381 S.W.3d 500, 510-11 (Tex. 2012) (noting, based on its earlier decision in *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex. 2000), the failure to comply with statutory prerequisites to suit will not deprive a trial court of jurisdiction over a statutory cause of action).

A legal sufficiency or "no evidence" challenge can only be sustained where the records shows:

1.     the complete absence of evidence of a vital fact;

2.     that the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;

3.     that the evidence offered to prove a vital fact is no more than a scintilla; or

4.     that the evidence establishes conclusively the opposite of a vital fact.

*See id.* (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005)). Evidence is to be reviewed in the light most favorable to the finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *Id.* (citing *City of Keller,* 168 S.W.3d at 807).

**2.     Chesloff's charge of discrimination related back to her timely-filed intake questionnaire.**

Appellants spend a great deal of time citing and discussing cases that hold simply that before filing suit on a TCHRA claim, a complaint must be filed with the Texas Workforce Commission, or the EEOC, within 180 days of the alleged discriminatory action. *See* Appellants' Brief at 22-33. Chesloff does not dispute this general rule. Appellants' focus however is misplaced

because it centers exclusively on the date that Chesloff's formal charge of discrimination was filed with the EEOC on October 30, 2009.[9] *See* Appellants' Brief at 35. Chesloff's formal charge, however, relates back to the intake questionnaire that Chesloff timely filed on September 24, 2009, 174 days after March 30, 2009, the date even Appellants argue was the last date of sexual harassment.

To bring a claim of employment discrimination under the TCHRA, as Chesloff did here, Chesloff was required to file a sworn, written complaint within 180 days of the alleged discriminatory act. *See* Tex. Labor Code § 21.202(a). The timely filing of an administrative complaint is a mandatory prerequisite to filing suit. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.3d 490, 492 (Tex. 1996).

To constitute a valid complaint, the document must: (1) be in writing; (2) be made under oath; (3) state that an unlawful employment practice was

---

[9] Pursuant to a work-sharing agreement between the EEOC and the TCHR, whenever the EEOC receives a charge of discrimination, "the TCHR, for all legal and practical purposes, received the complaint." *Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994); *see also Williams v. Vought*, 68 S.W.3d 102, 108 (Tex. App.—Dallas 2001, no pet.) (complaint filed with the EEOC satisfies the requirements of the TCHRA); 40 Tex. Admin. Code § 819.41(c). Thus, when Chesloff submitted her intake questionnaire and charge of discrimination to the EEOC, the EEOC accepted those documents not only for its own purposes but also for the purposes of the TCHR.

committed; (4) contain the facts on which the complaint is based, including the date, place, and circumstances of the alleged unlawful employment practice; and (5) include facts sufficient to enable the commission to identify the respondent. *See Alexander,* 300 S.W.3d at 70 (citing Tex. Labor Code § 21.201). Appellants do not complain about the sufficiency of Chesloff's complaint. Appellants only question the timeliness of Chesloff's complaint based on the timing of the formal charge of discrimination. *See* Appellants' Brief at 34-36.

While the formal charge was received by the EEOC outside the 180-day period, that charge relates back to Chesloff's intake questionnaire that was timely filed. Under both Texas and federal law, a sworn charge of discrimination relates back to the date on which a plaintiff files her intake questionnaire. *See Hennigan v. I.P. Petroleum Co., Inc.,* 858 S.W.2d 371, 372 (Tex. 1993); *Price v. Southwestern Bell Tele. Co.,* 687 F.2d 74, 78 (5th Cir. 1982).

The rationale for this relation-back rule is sound. Employment discrimination charges are to be construed "with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." *Price,* 687 F.2d at 78; *see also Clark v. Craft Foods, Inc.,* 18 F.3d 1278, 1280 n. 7 (5th Cir. 1994). Accordingly, both Texas

10

and federal law allow for liberal amendment of a charge "to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint" and expressly provide that such amendments "relate[] back to the date the complaint was first received by the commission." Tex. Labor Code § 21.201(e), (f); *see also* 40 Tex. Admin. Code § 819.41(g) (2014) (Texas Workforce Comm'n Civil Rights Div., Filing a Complaint); 29 C.F.R. § 1601.12(b) (2015).

The clear intent of the statute is that "employees … who initially filed technically deficient complaints within the 180 days be entitled to amend the complaints outside the 180 days and still take advantage of all the remedies of the Act, including the right to bring a civil action for enforcement of the Act." *Dallas County Sw. Inst. of Forensic Sci. & Med. Exam'r Dep't v. Ray*, 400 S.W.3d 219, 224 (Tex. App.—Dallas 2013, pet. denied). In light of the statute's intent and liberal amendment policy, a charge of discrimination filed outside the limitation period relates back to a timely-filed intake questionnaire and is, thus, timely itself. *See Hennigan*, 858 S.W.2d at 372; *Ray*, 400 S.W.3d at 222 (noting that amended complaint related back to unsworn intake questionnaire filed 174 days after termination); *Alexander*, 300 S.W.3d at 73 (noting that timely filed intake questionnaires can sometimes be used to

11

satisfy the timeliness requirement under the TCHRA); *City of La Joya v. Ortiz,* No. 13-06-401-CV, 2007 WL 293019, at *3 n. 4 (Tex. App.—Corpus Christi Feb. 1, 2007, no pet.) (mem. op.) (verified charge of discrimination related back to, and satisfied any deficiencies in, unverified intake questionnaire); *Wal-Mart Stores, Inc. v. Canchola,* 64 S.W.3d 524, 535 (Tex. App.—Corpus Christi 2001), *rev'd on other grounds*, 121 S.W.3d 735 (Tex. 2003) ("a verified complaint relates back to and satisfies any deficiencies in an unverified questionnaire filed within the applicable time limit).[10]

Here, Appellants admit and the documents confirm that, at the very least, the last act of discrimination took place on March 30, 2009.[11] *See*

---

[10] *See also City of Sugar Land v. Kaplan,* 449 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (noting that "the Third Court of Appeals has recognized that a timely filed intake questionnaire can sometimes be used to satisfy the Act's exhaustion requirement," but not deciding the issue absent evidence of the intake questionnaire itself); *Hamer v. Ewing Constr. Co.,* No. C-07-93, 2007 WL 1231681, at *3-4 (S.D. Tex. Apr. 24, 2007) (finding that formal, but untimely, charge of discrimination, related back to intake questionnaire received before the 180 day limit expired); *Hansen v. AON Risk Servs. of Tex., Inc.,* No. Civ. A. H-05-3437, 2006 WL 846363, at *5 (S.D. Tex. Mar. 31, 2006) (finding that sworn charge of discrimination related back to date on which plaintiff filed his intake questionnaire).

[11] In the trial court, the parties focused more on whether the lawsuit the Appellants filed against Chesloff on August 18, 2009, constituted a "continuing violation" of Appellants' sexual harassment of Chesloff that began in January 2009 and extended through March 30, 2009. (1 CR 209-212). The continuing violation doctrine is an exception to the 180-day limitation period and requires a showing of an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the causes of action and triggers the 180-day limitations period. *See Santi v. Univ. of Tex. Health Sci. Ctr. at Houston,*

12

Appellants' Brief at 35-36; (1 CR 120-124, 127); (17 RR Plaintiffs' Ex. 1).

Assuming, as Appellant do, that March 30, 2009, was the last date of discrimination, then Chesloff was required to file with the EEOC within 180 days, or by September 26, 2009. Chesloff signed the intake questionnaire on September 21, 2009, and the intake questionnaire indicates it was received by the EEOC on September 24, 2009. (1 CR 120, 124). Accordingly, the intake questionnaire was timely filed and the subsequently-filed, more formal charge of discrimination, filed a month later (1 CR 127), related back and was therefore timely. Chesloff satisfied her statutory prerequisite to bringing her sexual harassment claims and the trial court's judgment on those claims should be, in all things, affirmed.

## B. The trial court abused its discretion when it denied Chesloff her back pay.

The TCHRA allows a trial court to award back pay. *See* Tex. Labor

---

312 S.W.3d 800, 804-5 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Chesloff argued that Appellants' conduct in June and their subsequent lawsuit against her for slander and breach of fiduciary duty was simply a continuation of the sexual harassment and hostile work environment Appellants created months earlier. (1 CR 209-12). Since that continuing conduct did not effectively end until Appellants filed suit against Chesloff, Chesloff argued that doing so extended accrual of the 180-day limitation period and made even her October 30, 2009 formal charge of discrimination timely. Chesloff does not concede that defense here, but simply acknowledges that the argument is rendered largely academic in light of the fact that, even based on Appellants' version of the facts, the intake questionnaire was timely filed, making the formal charge—which relates back to the intake questionnaire—timely as well.

Code § 21.258(a). Here, however, the trial court refused to award Chesloff any back pay based on its mistaken belief that Chesloff did not properly disclose the amount of back pay she was claiming in response to written discovery requests. (12 RR 196:12-197:5). That ruling was error, and either a modified judgment should be rendered in Chesloff's favor for the amount of back pay she disclosed in deposition and proved at trial or Chesloff's claim should be remanded to the trial court for entry of judgment consistent with Chesloff's proof.

### 1. Standard of review – abuse of discretion

The denial of back pay to Chesloff stemmed from the trial court's refusal to allow Chesloff to testify to the amount of back pay to which she was entitled. (12 RR 197:5). The decision to exclude testimony is reviewed for abuse of discretion. *U-Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 132 (Tex. 2012) (per curiam). A trial court abuses its discretion when its ruling is arbitrary, unreasonable or without reference to any guiding rules or legal principles. *See id.*

To be reversible error, the exclusion of evidence must also be harmful. *See id.* If erroneously excluded evidence was crucial to a key issue, the error is likely harmful. *State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 874

14

(Tex. 2009).

**2.    The trial court abused its discretion when it excluded evidence of Chesloff's back pay.**

Essential to any claim for back pay is proof of what Chesloff was earning with Impression and Emme, how long she was out of work following her resignation, and what she was earning when she went to work for Venus Bridal.  According to the Pattern Jury Charges,

> "Back pay" is that amount of wages and employment benefits that *Paul Payne* would have earned if *he* had not been subjected to *his* employer's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits *he* received in the interim.

State Bar of Texas, *Texas Pattern Jury Charges:  Business, Consumer, Insurance & Employment* PJC 115.30 (2014).

The trial court excluded the only testimony regarding back pay when it excluded Chesloff's testimony on the subject.  (12 RR 196-197).  Since this was the only testimony regarding back pay, its exclusion was certainly harmful.

It was also an abuse of the trial court's discretion.  The trial court refused to allow Chesloff to testify as to the amount of her lost back pay because it believed that she did not supplement her written discovery

15

responses to quantify the amounts she sought to recover. (12 RR 196-197). But, Chesloff was not required to supplement her written discovery to provide this information because she had already provided it at her September 1, 2010 deposition, three-and-a-half years before trial. Specifically, according to Texas Rule of Civil Procedure 193.5(a)(2), a party is only required to amend or supplement written discovery responses if the information has not been otherwise "made known to the other parties in writing, *on the record at a deposition*, or through other discovery responses." (emphasis added). Since Chesloff provided this information at her deposition, (5 CR 1920 at 153:8-154:16), the trial court abused its discretion when it excluded her testimony.

**3.    This Court should render judgment in Chesloff's favor on her claim for back pay.**

Chesloff's testimony establishes that she was entitled to back pay in the amount of $24,000. (13 RR 4-7; 5 CR 1920 at 153:8-154:16). Although the issue of back pay may certainly be submitted to a jury, back pay is an equitable issue that is properly left to the sound discretion of the trial court. *See Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 816 (W.D. Tex. 2006) (noting that submitting back to the jury is merely advisory); *see also Autozone,*

16

*Inc. v. Reyes*, 272 S.W.3d 644, 658-59 (Tex. App.—Corpus Christi 2006), *rev'd on other grounds*, 272 S.W.3d 588 (Tex. 2008) (while issue of back pay is consistently submitted to juries, court may order back pay).

Here, Chesloff's excluded testimony proved that she is entitled to $24,000 in back pay. Accordingly, in reversing the trial court's exclusion of evidence and failure to award Chesloff her back pay, this Court should render judgment and award Chesloff the relief the trial court should have-- $24,000 in back pay. *See* Tex. R. App. P. 43.3. Alternatively, this Court should remand this case so that the trial court can consider this testimony and award Chesloff her back pay.

**C.** **The trial court abused its discretion when it drastically reduced the attorney's fees to which Chesloff was entitled.**

The TCHRA also allows a trial court to award attorney's fees to a prevailing party. *See* Tex. Labor Code § 21.259(a). Here, although the trial court awarded Chesloff some attorney's fees, it reduced the amount of litigation fees and conditional appellate fees by two-thirds, without any real explanation for doing so. (5 CR 1810-11). That was error.

**1.** **Standard of review – abuse of discretion**

An award of attorney's fees under the TCHRA is reviewed for abuse

17

of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012); *Jackson v. Host Int'l, Inc.,* 426 Fed. App'x 215, 225 (5th Cir. 2011). Determining a reasonable fee is a matter committed to the sound discretion of the trial judge, but the judge's discretion is not unlimited. *Jackson,* 426 Fed. App'x at 225 (quoting *Perdue v. Kenny A. ex. rel. Winn,* 559 U.S. 542, 558 (2010)).

> It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement. Unless such an explanation is given, adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case.

*Perdue*, 559 U.S. at 558. Thus, a trial court abuses its discretion when it awards attorney's fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement," and, necessarily, any reduction. *Jackson,* 426 Fed. App'x at 225 (quoting *Perdue,* 559 U.S. at 558); *see also Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013) (under abuse of discretion standard, a court of appeals is to inspect the trial court's lodestar analysis to determine if the court sufficiently considered the proper criteria).

Here, the trial court provided no explanation for its award of fees. As

will be shown below, this failure—in light of the evidence presented—was an abuse of discretion and this Court should render judgment in the amount proven by Chesloff or remand this case to the trial court to determine the proper amount of fees, considering the proper guiding rules and principles.

**2.      Proving fees under the TCHRA.**

Because the remedies available under the TCHRA mirror those available under Title VII of the federal Civil Rights Act, Texas courts look to federal law in applying the state statute, including section 21.259(a) of the TCHRA. *See El Apple I, Ltd.*, 370 S.W.3d at 760.  And, because federal courts use the lodestar method in awarding fees in Title VII cases, Texas courts do too under Section 21.259(a) of the TCHRA.  *Id.*

Under the lodestar method, a determination of what constitutes a reasonable attorney's fee involves two steps:

1.      the trial court is to calculate the lodestar itself by multiplying the reasonable hours spent by counsel in the case by the reasonable hourly rate for such work; and

2.      the trial court can adjust the base lodestar up or down (apply a multiplier) if relevant factors[12] indicate an adjustment is necessary to reach a reasonable fee in the case.

---

[12] These factors are commonly referred to as the *Johnson* factors in federal court, based on *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  In state court, the relevant factors are found in Texas Disciplinary Rule of Professional Conduct 1.04(b) and *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812 (Tex. 1997).

*Id.* Here, Chesloff's counsel proved that their hourly rates ($400/hour) were reasonable, and the hours spent in prosecuting the harassment claims (761 hours) were reasonable. (5 CR 1693-1765).

### 3. The hourly rate charged by Chesloff's counsel was reasonable.

Chesloff's counsel, Ron Estefan and Gene Shioda, each testified by affidavit that their hourly rates were reasonable for a plaintiffs' trial lawyer with 20 and 18 years of experience, respectively, in employment cases like this one. (5 CR 1742, 1760). Chesloff also submitted the affidavits of two other attorneys, Trang Tran and Margaret Harris, who regularly represent employees in employment-related litigation. (5 CR 1762 at ¶2, 1764 at ¶2). Both confirmed that the $400 hourly rate charged by Chesloff's counsel was reasonable given their experience and the work being performed, and was reasonable in Fort Bend County. (5 CR 1762 at ¶4, 6; 1765 at ¶6, 8).

Appellants did not object to these affidavits or otherwise contest the hourly rate proven by Chesloff's counsel. Instead, Appellants cited to a three-year-old State Bar of Texas hourly survey to claim that "a reasonable hourly rate would probably be about $275 per hour." (5 CR 1783, 1786). While such surveys can be considered, the reasonable hourly rate for a

particular community is more appropriately established through the affidavits of other attorneys. *See Tollett v. City of Kemah,* 285 F.3d 357, 368 (5th Cir. 2002). Chesloff presented such proof. Appellants did not, nor did they object to Chesloff's proof. Accordingly, the hourly rate of $400 per hour should have been conclusively established as reasonable. *See Tollett,* 285 F.3d at 369 (approving requested hourly rate based on counsel's affidavit and absence of any contest by the opposing party).

### 4. The hours spent by Chesloff's counsel were reasonable.

In her original motion for attorney's fees and costs, Chesloff's counsel documented, through detailed billing records, 1,120 hours spent in defending Appellants' claims against her and in prosecuting Chesloff's claims under the TCHRA. (4 CR 1417-78). "To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate." *El Apple I, Ltd.,* 370 S.W.3d at 765. Chesloff's counsel satisfied her burden of proof.

Appellants only real issue with the hours spent was that they were not segregated from the time spent defending Appellants' slander, breach of

fiduciary duty, and business disparagement claims. (4 CR 1627-40). Accordingly, and following a March 21, 2014 hearing in which Appellants argued a need to segregate and the trial court allowed Chesloff's counsel to resubmit a segregated claim for attorney's fees, Chesloff's counsel segregated its fees between those asserted by Appellants and the harassment claims upon which Chesloff prevailed. (5 CR 1693-1765). Upon doing so, Chesloff submitted 761 hours, which were reasonably related to the harassment claims. (5 CR 1702-3). This was a reduction of approximately 32%.

To meet a party's burden to segregate its attorney's fees, it is sufficient to submit testimony from a party's attorney concerning the percentage of hours that related solely to the claim for which fees are recoverable. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Chesloff's attorneys did this. Other than calling for a greater reduction, (5 CR 1786), Appellants do not seriously dispute the percentage by which Chesloff's attorneys segregated their fees. Accordingly, the 761 hours proven by Estafan and Chioda's affidavits and billing records is, for purposes of establishing the lodestar, reasonable.

**5.** **The relevant factors do not warrant a reduction in Chesloff's segregated attorney's fees.**

The Texas Supreme Court "accept[s] the premise that lodestar presumptively produces a reasonable fee." *El Apple I, Ltd.*, 370 S.W.3d at 765. The lodestar here, and thus the presumptively reasonable fee to which Chesloff is entitled, is the 761 hours established by Chesloff's fee application times the $400 hourly rate proved by the affidavits and declarations submitted by Chesloff's counsel and experts, for a total lodestar fee of $304,400.00.

Once the base lodestar has been calculated, a court may raise or lower the lodestar amount if certain relevant factors indicate an adjustment is necessary. *Williams-Pyro, Inc. v. Barbour*, 408 S.W.3d 467, 483 (Tex. App.—Dallas 2013, pet. denied); *see also El Apple I,* 370 S.W.3d at 765 ("exceptional circumstances may justify enhancements to the base lodestar."). Here, Chesloff did not ask for enhancement of the fee. Appellants, however, asked for and were granted, a reduction of the fee. That reduction was arbitrary, not based on any guiding rules and principles and, as such, constituted an abuse of discretion.

In their response to Chesloff's request for fees, Appellants speculated

that "probably less than 40% of [the attorney's] time was spent on sexual harassment claims" which "would reduce the amount of hours to 448 hours." (5 CR 1786). Of course, this argument was wild speculation as Appellants could articulate no concrete basis for such a contention.[13] (5 CR 1774).

Otherwise, the basis for this two-thirds reduction is unclear. By all indications, it is not tied to any of the other factors the trial court could consider:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

---

[13] By contrast, in segregating her attorney's fees, Chesloff's attorneys assigned a percentage to each and every line item on their detailed billing records so that the trial court and Appellants' counsel could see exactly which tasks were segregated and the degree to which a particular task involved the sexual harassment claim versus any of the other claims at issue. (5 CR 1705-40, 1744-58).

(6)     the nature and length of the professional relationship with the client;

(7)     the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*El Apple I, Ltd.*, 370 S.W.3d at 761.[14]

At best, the two-thirds reduction can be linked to Appellants' argument that the fees should be reduced because Chesloff "only prevailed on 1/3 of her sexual harassment claims." (5 CR 1786). The trial court apparently agreed, at least to some degree, reducing the lodestar fee by two-thirds to $100,000.00 ($50,000.00 from Impression Bridal and $50,000.00 from Emme Bridal).[15] (5 CR 1810-11). In short, the argument for reduction is tied directly and exclusively to the results obtained in this litigation. (5 CR 1783-84). This was error.

Certainly, the amount of damages a plaintiff recovers is relevant to the

---

[14] As stated earlier, these factors mirror those set out by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

[15] The trial court also reduced the conditional appellate fees to which Chesloff was entitled by a nearly identical, two-thirds amount. (5 CR 1811).

amount of attorney's fees to be awarded. *See City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986). But, that is only one of many factors a court should consider in calculating an award of attorney's fees. *Id.* In fact, the U.S. Supreme Court has expressly rejected a proposition that fee awards under civil rights statutes need to be proportionate to the amount of damages the plaintiff actually recovers. *Id.; see also Lewallen v. City of Beaumont,* 394 Fed. App'x 38, 46-47 (5th Cir. 2010) ("There is no strict rule or maximum limit on the permissible ratio of fees to damages."); *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 395 (5th Cir. 2003); *Green v. Administrators of the Tulane Educ. Fund,* 284 F.3d 642, 663 (5th Cir. 2002) (finding argument that reduction of fees award was warranted because plaintiff "was not completely successful because all of her claims against [her supervisor] were dismissed, as well as her claims of intentional infliction of emotional distress and respondeat superior against Tulane" to be "without merit."). Thus, it is an abuse of discretion for the trial court to reduce an attorney's fees award based solely on the results obtained. *See Black,* 732 F.3d at 503.

Civil rights cases like this one are unique in that, unlike most private tort litigants, the "civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City*

26

*of Riverside*, 477 U.S. at 574. "[A] successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards." *Id.* The damages she recovers serve as an important deterrent to future civil rights violations and, as Congress has recognized, the plaintiff who obtains such relief "does so not for [her]self alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest importance." *Id.* Since damages awards in these kinds of cases do not fully reflect the public benefit advanced by the civil rights litigation, Congress never intended for fees in these cases to depend on obtaining substantial monetary recovery. *Id.*

More importantly, however, a rule like the one Appellants asserted in the trial court that limits attorney's fees in civil rights cases to a proportion of the damages awarded would, as *City of Riverside* noted, seriously undermine the purpose of civil rights statutes. *See id.* at 576. Civil rights victims "ordinarily cannot afford to purchase legal services at the rates set by the private market" and contingency fee arrangements like the one here between Chesloff and her counsel "that make legal services available to many victims of Congress' personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial

27

expenditures of time and effort but produce only small monetary recoveries." *Id.* at 577. A rule like the one Appellants argue for here, and the trial court seems to have applied, "would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Id.* at 578.

For this reason, it is not uncommon for courts to approve proportionately large attorney's fees awards. In *City of Riverside,* the U.S. Supreme Court affirmed an award of approximately $245,000 in attorney's fees where only $33,000 in actual damages were awarded. *See id.* at 564-65. In *Lewallen*, the Fifth Circuit approved an award of approximately $445,000 in attorney's fees and costs where actual damages of $50,000 were awarded by the jury. *See Lewallen,* 394 Fed. App'x at 46-47 ("Under the totality of the circumstances of this protracted and hard-fought litigation, the facially disproportionate ration of compensatory damages to attorneys fees and costs is neither surprising nor unreasonable."). Here, there was no rational basis upon which to reduce the attorney's fees award based solely on the damages or degree of success.[16] By doing so, the trial court abused its

---

[16] At the second hearing on Chesloff's motion for attorney's fees, the trial court expressed concern with what he perceived to be duplicative billing by Mr. Shioda. (16 RR 9-10). In

28

discretion.

To the extent the trial court's reduction was based on some other factor, the trial court's failure to explain the basis for its reduction constitutes an abuse of discretion in and of itself. *See Jackson,* 426 Fed. App'x at 225 (quoting *Perdue,* 559 U.S. at 558). Accordingly, the trial court erred in reducing the segregated fees established by Chesloff and Chesloff requests that this Court either render the judgment for attorney's fees that the trial court should have, or remand the issue of attorney's fees to the trial court for a determination of the proper amount to be awarded, consistent with Chesloff's arguments and this Court's ultimate opinion.

## IV. CONCLUSION & PRAYER

Chesloff's EEOC complaint was timely, she properly exhausted here administrative remedies, and the trial court properly entered judgment on her behalf. Appellants' "jurisdictional" challenge was properly rejected below and should be rejected here.

The trial court did not, however, properly handle Chesloff's claims for

---

their briefing in the trial court, Appellants noted approximately 4.5 hours of time they claim was duplicated by Mr. Shioda. (5 CR 1776-78). While duplicative billing is a factor the trial court can consider in calculating the initial lodestar amount—specifically, the reasonable hours spent on the matter—there was no evidence or argument that duplicative billing warranted a two-third reduction in Chesloff's fees.

29

back pay and attorney's fees. Chesloff's evidence of back pay was properly disclosed years before trial, and it was harmful error for the trial court to exclude that testimony from trial. The trial court's drastic reduction of Chesloff's requested attorney's fees was also error. By all indications, the reduction was arbitrary, as the trial court did not explain its reasons for doing so. This was an abuse of discretion. *See Jackson*, 426 Fed. App'x at 225. Notwithstanding this omission, the only conceivable basis for a two-thirds reduction in litigation and appellate attorney's fees was the damage awards to Chesloff. But, it is an abuse of discretion for a trial court to reduce an attorney's fees award based solely on the results obtained, *see Black*, 732 F.3d at 503, and thus the trial court abused its discretion here too.

For these reasons, Appellee/Cross-Appellant Ellen Chesloff respectfully requests that this Court affirm the judgment on her sexual harassment claims, and reverse the judgment to the extent it refused to award her back pay and improperly reduced her attorney's fees award. Chesloff further requests that this Court render judgment in her favor and against Appellants Ashdon, Inc. d/b/a Impression Bridal and Emme Bridal, Inc. on her claim for back pay and attorney's fees in the following amounts:

- $24,000.00 in back pay; and

- $304,400.00 for attorney's fees incurred in the trial court;

- $68,000.00 for attorney's fees in the event of an unsuccessful appeal to this Court by Appellants;

- $25,500 for attorney's fees in the event a petition for review is filed in the Texas Supreme Court;

- $42,500.00 for attorney's fees in the event full briefing is requested by the Texas Supreme Court; and

- $24,000.00 for attorney's fees in the event oral argument is granted on a petition filed in the Texas Supreme Court.

Alternatively, and in the event this Court is unable to render judgment as requested, Chesloff requests that this Court remand those issues to the trial court for determination. Chesloff further requests such other relief to which she may be justly and equitably entitled.

Respectfully submitted,

By: */s/ Thad D. Spalding*
**Thad D. Spalding**
State Bar No. 00791708
tspalding@texasappeals.com
**Peter M. Kelly**
State Bar No. 00791011
pkelly@texasappeals.com
KELLY, DURHAM & PITTARD, LLP
PO Box 224626
Dallas, TX 75222
Telephone: 214.946.8000
Facsimile:   214.946.8433

and

**Ronald M. Estefan**
State Bar No. 00785851
ron@ronestefanlaw.com
THE ESTEFAN FIRM, P.C.
2306 Mason Street
Houston, Texas 77006
(713) 333-1100
(713) 333-1101 (Fax)

**COUNSEL FOR
APPELLEE/CROSS-APPELLANT**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of Rule 9.4(i)(2)(B) because it contains **6,379** words, excluding any parts exempted by Rule 9.4(i)(1).

*/s/ Thad D. Spalding*
**Thad D. Spalding**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this *Appellee's/Cross-Appellant's Brief* has been forwarded to the following counsel of record on this **5th** day of **June 2015**, pursuant to Texas Rule of Appellate Procedure 9.5(b)(1).

Barham Lewis, Barham.Lewis@ogletreedeakins.com
Angela N. Prince, Angela.Prince@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Allen Center
500 Dallas Street, Suite 3000
Houston, Texas 77002

/s/ Thad D. Spalding
**Thad D. Spalding**